Cite as 2016 Ark. App. 308

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV–15–310

| | |
|---|---|
| DANNY BENNETT     APPELLANT | **Opinion Delivered** June 8, 2016 |
| V. | APPEAL FROM THE WHITE COUNTY CIRCUIT COURT [NO. DR–2013-568] |
| SHEILA BENNETT     APPELLEE | HONORABLE THOMAS HUGHES, JUDGE |
| | AFFIRMED |

## BART F. VIRDEN, Judge

Appellant Danny Bennett appeals from the White County Circuit Court's December 1, 2014 order that divided the parties' marital property and debt, awarded permanent alimony, and awarded attorney's fees.[1]  Danny raises four points on appeal: (1) the second circuit court judge misinterpreted the prior judge's temporary order concerning the mortgage payments, and, after the marital home was sold, Danny should not have been ordered to continue making $1600 more each month in payments toward the marital debt than Sheila was required to pay; (2) the circuit court abused its discretion in awarding Sheila the amount of attorney's fees that it did; (3) the circuit court erred in not making Sheila equally liable for the Audio Express debt; and (4) the circuit court abused its discretion in awarding the amount of alimony that it did.  We affirm.

---

[1] We previously ordered Danny to supplement the record and rebrief the appeal. *Bennett v. Bennett*, 2015 Ark. App. 646. The  errors have been sufficiently corrected to allow consideration of the merits.

SLIP OPINION

I. *Facts*

In August 2013, Sheila Bennett filed for divorce after thirty years of marriage to Danny Bennett. Danny answered and filed a counterclaim for divorce, citing general indignities, though he eventually withdrew his counterclaim. Sheila requested temporary alimony. On September 17, 2013, the circuit court (at that time Judge Craig Hannah) held a hearing on the matter.

Sheila Bennett testified at the hearing. Sheila stated that her weekly income was about $420 and that her ex-husband made about twice her income. Sheila requested that the circuit court allow her to live in the marital home, that it award her the truck she drove, that it grant her temporary possession of the home's furnishings, and that it grant her spousal support and attorney's fees. Sheila requested that the circuit court order Danny to continue paying the mortgage and other bills. Sheila testified that she gave Danny $200 a week and that he had been using that money to pay bills. Sheila testified that although she could live with her mother temporarily she could not live there long-term.

Danny Bennett also testified. He denied that he had spent any money on his girlfriend, and he denied that she accompanied him on any trips. He also testified that he could make many of the repairs to the marital home that were necessary before selling it. Danny requested that the court allow him to stay in the marital home to make the necessary repairs in order to prepare it for sale. Danny disagreed that Sheila paid him $200 once a week, stating that she actually paid him $400 a month and that he was paying the bulk of the debt. Danny stated that he made either two or three times Sheila's income.

The circuit court made the following statement in response to the testimony presented at the hearing:

> It appears that the parties have more debts than they can pay and neither one alone can pay all of these debts. The fair thing to do on some of these bills is to make the minimum payments on each one. Mr. Bennett will pay the first $1600 and then both will be equally obligated to pay their half. By doing that I think that it will get this to where their disposable income is down to about the same amount. On the home, if the parties can't agree within thirty days then both parties will have to move out. The house will go on the market within forty-five days.

Later, at the end of the hearing, the following clarification occurred:

> THE COURT: Mr. Bennett will be liable for some sort of alimony, or shifting of the debt, or something, because that is what the law is going to require. On a temporary basis, I think Mr. Bennett can pay the first $1600 of the debt. That gets him fairly close to the same equivalent as paying alimony.
>
> COUNSEL FOR SHEILA: I am trying to make sure I understand what the Court is telling me.
>
> THE COURT: He will pay the first $1600 and then the balance of the debt they are equally responsible for.
>
> COUNSEL FOR SHEILA: So it's up to us to determine what that $1600 is going to be made up of?
>
> THE COURT: Pay the house payment and the second mortgage and that just about eats it right there.
>
> COUNSEL FOR DANNY: Certainly they can work toward listing it while the repairs are being made. Looking at the Affidavit of Financial Means and the supplements provided by the parties, the monthly debt obligation of the parties is $5375, but what this Court is ordering is that Danny Bennett will pay the first $1,600.00 of that sum?
>
> THE COURT: I think the mortgage . . .
>
> COUNSEL FOR DANNY: The mortgage and the second mortgage.
>
> THE COURT: The first and the second mortgage gets you right there at that amount. I don't know if these other payments are minimum payments or . . .

COUNSEL FOR SHEILA: We really don't either. We haven't received any discovery yet.

THE COURT: I am going to say that you all are equally responsible.
If we come back to court and somebody needs to pay more than the other, then it will be balanced out at the final.

. . .

THE COURT: Both of them are going to have to find a place to live and nothing will change because they will both have new expenses. Mr. Bennett will still be responsible for –

COUNSEL FOR DANNY: The first and second –

THE COURT: -- paying the first and second mortgage and if –

COUNSEL FOR DANNY: They'll –

THE COURT: -- they're fortunate and the house sells quick, then he'll pay $1600 on something else.

On the same day, the circuit court entered a temporary order in which it found that the parties had agreed to sell their home to help pay down marital debt. The circuit court also found that "Danny Bennett will pay the first $1600 of marital debt which would be the first and second mortgage on the parties' marital home. The parties will each be responsible for payments of one-half the remaining monthly payments on the parties' marital debt on a temporary basis." The court awarded temporary spousal support to Sheila and deferred making a ruling on her request for temporary attorney's fees until the final hearing.

Judge Thomas Hughes was later assigned the case, and he entered the decree of divorce on October 2, 2014, which set forth that a property-settlement agreement would be entered at a later date. On December 1, 2014, the circuit court entered the order settling the property issues. The circuit court found that the April 2014 sale of the parties' marital home resulted

in a net profit of $22,157.96. The circuit court also found that the original temporary order ordered Danny to pay $1600 per month "toward the payment of the parties' marital debts. This would be the first and second mortgage on the parties' marital home." In its order, the circuit court noted that Danny had admitted not making all of those payments since the entry of the temporary order; therefore, Danny's share of the $22,157.96 would be reduced by the amount of the outstanding mortgage payments, which totalled $2,096.21. The circuit court found that Danny spent $4,541.25 getting the house ready to sell, and Sheila owed him half of that amount, totaling $2,270.63. The circuit court found that each party was equally responsible for the remaining marital debt.

The order also settled the issues surrounding the stock in Danny's business. The circuit court found that Danny had obtained 40% of the stock in Audio Express, and had given a promissory note for $90,000 for this stock and that he had also given another promissory note for $24,000 for capital for the business. The circuit court ordered that Sheila would receive one-half of the stock, "subject to the outstanding debt for the purchase of the stock in the amount of $114,000." The circuit court also found that each party would receive half of the proceeds of the marital IRA accounts.

On the issue of permanent alimony, the circuit court awarded $1500 per month in alimony to Sheila in light of the length of the marriage, in order to allow her to maintain a similar lifestyle, and in order to fairly divide the equities. In support of its award, the circuit court made the following findings: during the thirty-year marriage, Danny was the primary income earner; during the last five years, Danny earned 73% of the income, and Sheila earned

5

27%; Danny had been able to pay his girlfriend's household expenses and had moved in with her; Danny had the ability to pay alimony based on his current salary; and Sheila must obtain medical insurance and housing.

Sheila was awarded $6,641.10 in attorney's fees, and the circuit court awarded her costs of $165. Both parties were held in contempt–Sheila for failing to pay costs associated with preparing the house for sale, and Danny for destroying personal property that had been claimed by Sheila and for not paying certain marital debt–but neither party was sanctioned.

On December 12, 2014, Danny filed a motion for reconsideration. In the motion he asserted that the court's adoption of Sheila's proposed findings of fact and conclusions of law was not supported by the evidence. In his motion, Danny disputed the circuit court's decision to reimburse Sheila for outstanding mortgage payments from the net amount garnered from the sale of the marital home, that the circuit court erred in continuing the order to pay $1600 per month toward the marital debt after the home sold, that Sheila was not entitled to attorney's fees or, alternatively, she should not have been awarded attorney's fees in the amount awarded, and that the amount of alimony awarded was unfair in light of their current financial status. The motion was denied, and Danny filed a timely notice of appeal.

II. *Points on Appeal*

A. The $1600 Monthly Payments

As a general rule, judgments are construed like any other instruments; the determinative factor is the intention of the court, as gathered from the judgment itself and the record. *Chester v. Pilcher*, 2013 Ark. App. 571, at 8, 430 S.W.3d 130, 135. To the extent that

the circuit court's bench ruling conflicts with its written order, if at all, the written order controls over the court's oral ruling. *Stills v. Stills*, 2010 Ark. 132, at 12, 361 S.W.3d 823, 830.

At the hearing on the matter, the circuit court pronounced from the bench that the $1600 payments toward the marital debt would continue after the sale of the marital home occurred, stating that when the house sold, "then he'll pay $1600 on something else."

The subsequent temporary order set forth the following:

Danny Bennett will pay the first $1600 of marital debt which would be the first and second mortgage on the parties' marital home. The parties will each be responsible for payments of one-half the remaining monthly payments on the parties' marital debt on a temporary basis.

In the permanent order entered on October 2, 2014, the circuit court found that Danny had failed to make the $1600 per month payments after the home had sold, and that he owed $9600 for six months of missed payments. Danny argues that the circuit court erred when it ordered that he was to continue to make $1600 payments toward the marital debt–over and above his required payment of half of the amount of the monthly payments on the marital debt–after the home sold because it misinterpreted the original, temporary order. We disagree.

In its ruling from the bench, the circuit court made it clear that Danny would continue to make $1600 in payment toward the marital debt after the mortgage payments ceased with the sale of the home. The temporary order was entered, and when the second circuit court entered the order, the circuit court interpreted the temporary order to mean that Danny would pay $1600 either as mortgage payments, or if the home sold and mortgages were no

longer at issue, then the $1600 payments would go toward some other debt. After he paid the initial $1600 payment, he was still required to contribute half of the amount of the remaining monthly payments on the remaining marital debt. As we set forth above, the determinative factor in interpreting the order is the intention of the court, as gathered from the judgment itself and the record. *Chester, supra.* From our review of the language in the initial temporary order and in consideration of the original court's statements from the bench, we cannot say that the oral pronouncement conflicted with the language of the written orders, or that the circuit court misconstrued the temporary order. On this point, we affirm.

### B. Attorney's Fees

In domestic-relations proceedings, the circuit court has the inherent power to award attorney's fees, and whether the circuit court should award fees and the amount thereof are matters within the circuit court's discretion. *Tiner v. Tiner*, 2012 Ark. App. 483, at 15-16, 422 S.W.3d 178, 187. When addressing a circuit court's award of attorney's fees, our courts have often observed that there is no fixed formula in determining what is reasonable. *Id.*

In the present case, Danny argues that the only evidence concerning attorney's fees consisted of Sheila's testimony that she had about $1000 in fees, thus, she should be limited to that amount. At the hearing, Sheila testified that she had paid her attorney around $1000, that she owed more beyond that amount, and that she "had no idea" what she owed in total to her attorney. The circuit court did not ask for an accounting.

Danny relies on *Coker v. Coker*, 2012 Ark. 383, at 7, 423 S.W.3d 599, 604, in which our supreme court reversed the circuit court's award of attorney's fees based on the appellee's

SLIP OPINION

failure to submit an affidavit concerning her fees and costs; however, *Coker* is distinguishable from the present case. In *Coker*, the appellee asked the circuit court for direction concerning her request for attorney's fees and costs, and the circuit court ordered appellee to provide an affidavit. Instead of submitting the affidavit, appellee submitted the following statement, which she included in her proposed findings of fact and conclusions of law:

> Attorney's Fees. The Plaintiff filed a contempt motion pertaining to the payment of support, medical bills and arrearages. Moreover, in light of the disparity in income, the Defendant should also be ordered to pay the Plaintiff's attorney's fees. The Plaintiff has incurred fees and expenses in the amount of $11,376.12.

Our supreme court reversed the circuit court's award and held that the circuit court abused its discretion because it awarded fees in excess of the amount requested and in light of appellee's failure to provide the requested affidavit and her failure to define the requested expenses in the decree.

In the present case, no affidavit or accounting was requested by the circuit court. Furthermore, this court has been very clear that the circuit court has wide discretion on the issue of the award and amount of attorney's fees. In *Tiner, supra*, this court held:

> A court need not, however, conduct an exhaustive hearing on the amount of attorney's fees because it has presided over the proceedings and gained familiarity with the case and the services rendered by the attorney. Further, we have not strictly required documentation of time and expense in a divorce case where the trial court has had the opportunity to observe the parties, their level of cooperation, and their obedience to court orders. Due to the trial judge's intimate acquaintance with the record and the quality of service rendered, we usually recognize the superior perspective of the trial judge in assessing the applicable factors. Accordingly, an award of attorney's fees will not be set aside absent an abuse of discretion. An abuse of discretion occurs when discretion is applied thoughtlessly, without due consideration, or improvidently.

SLIP OPINION

Tiner, 2012 Ark. App. 483, at 16, 422 S.W.3d at 187 (citations omitted).[2]

As stated above, *Tiner* sets forth that there need not be an exhaustive hearing on the matter of the amount of attorney's fees, and in that case there was no hearing on the matter. Our holding in *Tiner* that "we have not strictly required documentation of time and expense" has come to mean that we require no documentation unless the circuit court had previously ordered such documentation. Or, alternatively, *Tiner* imposes a duty on the non-prevailing party to file a Motion for Findings of Fact and Conclusions of Law. Thus without the benefit of a hearing, any documentation, or analysis by the circuit court, we are required to determine if the circuit court abused its discretion.

In the present case, the circuit court did not request an accounting in order to determine fees. Furthermore, over the course of the case, from September 2013 to October 2014, the circuit court had plenty of opportunity to observe the parties, their level of cooperation, the attorney's resolution of the issues outside of court, and the quality of the attorney's work. In light of our case law and our standard of review on the issue of attorney's fees, we find that the circuit court did not abuse its discretion in awarding Sheila $6,641.10 in attorney's fees. On this point, we must affirm.

### C. Stock Debt

Danny argues that the circuit court's order concerning the debt attached to the Audio Express stock was ambiguous, and he asks this court to reverse and remand with instructions

---

[2] This court overruled *Stout v. Stout*, 2011 Ark. App. 201, 378 S.W.3d 844, with its holding in *Tiner*. In *Stout*, the rule was that the circuit court must evaluate the matter of attorney's fees in line with the factors set forth in *Chrisco v. Sun Indus., Inc.*, 304 Ark. 227, 800 S.W.2d 717 (1990).

SLIP OPINION

to the circuit court to modify the order to specifically state that the Bennetts are equally responsible for the debt. We do not agree that the circuit court's order is ambiguous, and on this point we affirm.

The circuit court set forth in its order that "[t]he parties will each be equally responsible for the remainder of the marital debt." The Audio Express stock asset was split evenly by the court, and the debt from the stock logically falls under marital debt. Furthermore, the circuit court stated from the bench that "if I give it [the stock] to her, I'm going to give her the debt, too. And she'd like to have that?" Counsel for Sheila assented. There is no question that the stock debt is marital debt, which was clearly split evenly by the circuit court's order. As a general rule, judgments are construed like any other instruments; the determinative factor is the intention of the court, as gathered from the judgment itself and the record. *Magness v. McEntire*, 305 Ark. 503, 506, 808 S.W.2d 783, 784 (1991). We have followed this general rule stating that judgments should be reviewed by looking to the judgment itself, pleadings, and any evidence presented. *Id*. In light of the language of the order splitting the marital debt, the circuit court's clarifying question from the bench, and Sheila's attorney's clear response that the stock debt would be assumed by Sheila, we find no ambiguity in the circuit court's order and no need for clarification through remand.

### D. Alimony

The decision whether to award alimony is a matter that lies within the circuit court's sound discretion, and on appeal, this court will not reverse the circuit court's decision to award alimony absent an abuse of that discretion. *Delgado v. Delgado*, 2012 Ark. App. 100, at 6, 389 S.W.3d 52, 57. An abuse of discretion means discretion improvidently exercised, i.e.,

exercised thoughtlessly and without due consideration. *Id*. The circuit court is in the best position to view the needs of the parties in connection with an alimony award. *Jones v. Jones*, 2014 Ark. App. 614, at 3, 447 S.W.3d 599, 601. The award of alimony is not mandatory, but is instead discretionary, and the circuit court's decision regarding any such award will not be reversed absent an abuse of discretion. *Powell v. Powell*, 82 Ark. App. 17, 110 S.W.3d 290 (2003). The purpose of alimony is to rectify, insofar as is reasonably possible, the frequent economic imbalance in the earning power and standard of living of the divorced parties in light of the particular facts of each case. *Holaway v. Holaway*, 70 Ark. App. 240, 16 S.W.3d 302 (2000). The primary factors to be considered in awarding alimony are the need of one spouse and the other spouse's ability to pay; secondary factors that may also be considered in setting alimony include (1) the financial circumstances of both parties, (2) the amount and nature of the income, and (3) the extent and nature of the resources and assets of each of the parties. *Id*. As this court explained in *Foster v. Foster*, 2015 Ark. App. 530, at 7, neither this court, nor our supreme court, has ever attempted to reduce the amount of alimony to a mathematical formula. Presumably, it has been thought that the need for flexibility outweighs the corresponding need for relative certainty. *Id*. In setting the amount of alimony, the circuit court may consider a range of acceptable alternatives. *Id*.

Danny argues that the circuit court impermissibly awarded alimony to Sheila to punish him for adultery and that a gross disparity in their incomes resulted from the award. We disagree with both assertions.

Danny points to the circuit court's finding that he had "spent sums on his girlfriend, including moving in with her and paying the household expenses while she was not

working." He argues that the circuit court's consideration of his expenditures towards his girlfriend's bills can only indicate punishment for adultery, and that punishment is not the purpose of alimony. *See Russell v. Russell*, 275 Ark. 193, 205, 628 S.W.2d 315, 321 (1982).

Nothing in the record indicates that the circuit court awarded alimony to Sheila punish Danny. *See Kuchmas v. Kuchmas*, 368 Ark. 43, 243 S.W.3d 270 (2006) (upholding alimony award where nothing in the record indicated that the circuit court relied on an improper factor in awarding alimony even though there was testimony related to the factor by the supported spouse). In the present case, the circuit court referred to other evidence in the record that was relevant to the proper economic factors. Contrary to Danny's assertion that the evidence did not support any ground for alimony other than punishment or entitlement, the circuit court considered both parties' extensive testimony regarding their income, assets, work history, standard of living, living arrangements, transportation needs, and future ability to earn money.

Danny also argues that the amount of the award of alimony to Sheila resulted in a gross disparity in their incomes. We hold that the circuit court did not err in the amount alimony it awarded. Sheila testified that she required $1500 per month to cover her living expenses without having to borrow money or move in with her mother. Sheila testified that the $1500 amount included the cost of utilities, maintaining a vehicle that was more than ten years old, housing, health insurance, and payments toward the $54,409.98 in marital debt. She testified that her income was $643.84 semi-monthly and that she had experienced health problems recently. By contrast, the circuit court considered evidence that Danny drove a car provided and maintained by his employment, that he received health insurance and life insurance with

13

his employment, and that he benefitted in the form of expenses-paid trips out of town through his job.

Danny claims that Sheila lives rent-free with her mother, and that there was no evidence that she had to obtain housing or "was being forced out of her mother's house." The record does not support this assertion. In her testimony, Sheila explained that she had asked her mother if she could live with her, and that her mother agreed "if it was for a very short term. She does not want me there long term." Sheila further testified that she was unable to bring anything but her clothes to her mother's house and had to rent a storage unit for her belongings.

The court found that alimony was appropriate given the length of the marriage, that Danny earned 73% of the income during their marriage, and that Sheila, at her current income, would be unable to maintain "anything close" to her lifestyle when she was married to Danny. The appropriateness of an alimony award is determined in light of the facts in each case, and the circuit court is in the best position to view the needs of the parties in connection with an alimony award. *See Stuart v. Stuart*, 2012 Ark. App. 458, at 9, 422 S.W.3d 147, 153. We hold that the circuit court in this case applied the correct legal standard, found facts that were supported by the evidence presented, and did not abuse its discretion in awarding alimony in the amount it did to Sheila.

Affirmed.

VAUGHT and HOOFMAN, JJ., agree.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for appellant.
*Robert M. Abney, P.A.*, by: *Robert M. Abney*, for appellee.