SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-16-766

| | | |
|---|---|---|
| JOSEPH BERRY | | **Opinion Delivered** March 8, 2017 |
| | APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, FIFTEENTH DIVISION [NO. 60DR-10-2467] |
| V. | | |
| DANA BERRY | | |
| | APPELLEE | HONORABLE RICHARD MOORE, JUDGE |
| | | AFFIRMED |

## N. MARK KLAPPENBACH, Judge

This appeal concerns a request to modify alimony in a postdivorce proceeding. Appellant Joseph Berry and appellee Dana Berry were divorced by a September 2013 Pulaski County Circuit Court decree after twenty-nine years of marriage. In the decree, Joseph was ordered to pay Dana $4,000 per month for fifteen years to be followed by $3,000 per month until Dana's remarriage or the death of either party. There were substantial assets awarded to both parties in the divorce, and their three children were no longer minors at the time of divorce. In August 2015, Joseph filed a motion for modification of alimony, contending that there were material changes in circumstances. Specifically, Joseph claimed that Dana had inherited substantial assets from her mother and that Dana no longer had a need for alimony. After a hearing conducted in March 2016, the trial court found that although Dana had

1

inherited assets from her mother, this was not an unanticipated material change that justified a termination or modification of alimony. Appellant appeals the order issued by the trial court. We affirm.

The standard of review is well settled. We review domestic-relations cases de novo, but we will not reverse a circuit court's finding of fact unless it is clearly erroneous. *Hunter v. Haunert*, 101 Ark. App. 93, 270 S.W.3d 339 (2007). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that the circuit court has made a mistake. *Id*. In reviewing a circuit court's findings of fact, we give due deference to the court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Brown v. Brown*, 373 Ark. 333, 284 S.W.3d 17 (2008); *Blalock v. Blalock*, 2013 Ark. App. 659.

The law on modification of an alimony award is also well settled. Modification of an alimony award must be based on a significant and material change in the circumstances of the parties, and the burden of showing such a change in circumstances is on the party seeking the modification. Ark. Code Ann. § 9-12-312(a)(7) (Repl. 2015); *Herman v. Herman*, 335 Ark. 36, 977 S.W.2d 209 (1998). The purpose of alimony is to rectify the frequent imbalance in the earning power and standard of living of the parties in light of the particular facts of each case, and the primary factors to be considered in making or changing an award of alimony are the need of one spouse and the ability of the other spouse to pay. *Herman, supra*. Secondary factors that may be considered include the financial circumstances of both parties, the couple's

past standard of living, the amount and nature of the parties' current and anticipated incomes, the extent and nature of each party's resources and assets, the amount of income of each that is spendable, the health condition and medical needs of each party, the duration of the marriage, the amount of child support, and the earning ability and capacity of each party. *Johnson v. Cotton-Johnson*, 88 Ark. App. 67, 194 S.W.3d 806 (2004). An award of alimony is a matter lying within the discretion of the trial court, and it will not be reversed absent an abuse of that discretion. *Hix v. Hix*, 2015 Ark. App. 199, 458 S.W.3d 743. The trial court has the authority to make an award of alimony that is reasonable under the circumstances. *See Brave v. Brave*, 2014 Ark. 175, at 10, 433 S.W.3d 227, 233. It is not our duty under our standard of review to simply substitute our judgment for that of the circuit court, which was in a far better position to judge the credibility of the witnesses. *See Whitworth v. Whitworth*, 2009 Ark. App. 410, 319 S.W.3d 269.

With these rules to guide our decision-making, we examine the proceedings before the trial court in greater detail. In the 2013 divorce decree, Dana was awarded the marital home valued at $384,000, free of any encumbrances.[1] Joseph was awarded the parties' townhouse in Oxford, Mississippi, that had $32,000 in equity. The parties owned three condominium properties that were to be sold and the proceeds divided equally, after payoff of $344,067 still owed on those properties and the expenses related to sale. Because Joseph lived rent-free in one of these properties and received rental income from a roommate, Joseph

---

[1]Joseph assumed the liability for a $199,722 second mortgage on the house.

was made responsible for the costs and expenses associated with the condominiums until sold. Regarding office properties the parties owned, each was awarded $6,871.50 in equity. The parties evenly divided the marital accounts, each receiving $183,751.50. The vast majority of the parties' personal property remained in the marital home and was awarded to Dana. Joseph retained his accounting business, Berry & Associates, which was valued over one million dollars. Dana was awarded $105,042 as her marital portion of the business, to be paid to Dana in monthly installments over five years.

In addressing alimony, the trial court's order recited that Joseph had historically earned four to five times more than Dana; that Joseph owned and controlled his own accounting firm and made discretionary withdrawals from the business account; that Dana was an employee at Stone Ward, which was less permanent than Joseph's situation; that the parties enjoyed a very comfortable lifestyle; that Joseph's potential was for a continuation, if not an increase, in his business income; that Joseph was ordered to assume certain debts and obligations regarding the real property; that this was a twenty-nine-year marriage wherein Dana was primarily responsible for the home and the family, although she assisted at times with Joseph's business needs; and that Dana had medical conditions that might require specialized treatment in the future. The trial court concluded that after consideration of these factors, coupled with Dana's needs and Joseph's ability to pay, alimony would be paid in the amount of $4,000 per month for the first fifteen years, and then $3,000 per month until Dana's remarriage or either party's death. There was no appeal from this order.

Cite as 2017 Ark. App. 145

In August 2015, Joseph filed his motion to terminate alimony, asserting that due to Dana's inheritance, she no longer had a need for alimony. In September 2015, Dana filed a response to Joseph's motion wherein she resisted his request, noting that the original award of alimony was based on a host of factors. Her response recited that "[t]he alimony awarded in this is not simply based on the Plaintiff's need, and therefore, the recent death of the Plaintiff's mother and potential inheritance is not a basis for modification."

At the March 2016 hearing, Dana testified that she was fifty-six years old[2] and earned approximately $77,905 in annual salary. She agreed that she had increased her retirement contributions from each paycheck, noting that she had no way to save for retirement while she was a stay-at-home mother. Dana stated that she was still paying for the parties' son's college expenses;[3] that she had ongoing house repair costs because it was a twenty-five-year-old house;[4] that she had a net worth of $735,000; that she was still working at Stone Ward and had received raises; that she had no unsecured debt, but her 2010 model vehicle had 107,000 miles on it; and that she hoped to continue helping pay some of their son's expenses on a monthly basis because their son anticipated going to graduate school. Dana said that she testified about her mother's ill health back in 2013 while divorce proceedings were underway,

---

[2]The record reflects that both parties were born in 1959.

[3]Dana estimated in her Affidavit of Financial Means that her annual expenses attributable to the parties' college-age son were $30,000.

[4]She said that the house needed new carpeting, a new driveway, drainage repair, and tree removal.

noting "her impending passing at some point in the near future." Dana said that she inherited her mother's assets, which were valued at approximately $448,000. The assets attributable to Dana's mother included life insurance policies, checking and savings accounts, proceeds from the sale of her mother's car, proceeds from the sale of her mother's house, and proceeds from an estate sale of her mother's personalty (furniture, decorative items, etcetera). She stated that she still had problems with vertigo but that it had not often prevented her from working. She testified that she had worked at Stone Ward, a public-relations firm, for about eight years, but it was not necessarily secure and stable income because there were sometimes changes in clientele or the amount of work billed to clients.

Joseph testified to his belief that Dana's net worth was $1,333,382 and that her annual gross income was actually closer to $92,000. Joseph said that Dana's personal financial statement revealed the additional assets. Joseph stated that although Dana was helping to support their son, he was set to graduate from college in May, ending that expense. Joseph added that their son had earned about $10,000 in an internship that would go toward graduate expenses, and he (Joseph) intended to buy their son a car upon graduation. Joseph stated that his own net worth was $694,136, and he had significant debt, whereas Dana had no debt. Joseph asked that alimony be terminated because "a million four is adequate for any individual," and Dana no longer had a need for alimony. Joseph testified that he built a new house in Mississippi that was worth $490,000, and he had $390,000 in equity. Joseph's income was over $400,000 annually, according to a recent financial statement that he

provided as an exhibit. He agreed that he had the ability to pay the alimony, but he questioned Dana's need, pointing to her having excess income at the end of every month with which she was simply funding her retirement accounts.

At the conclusion of the hearing, Dana's attorney reiterated that a multitude of factors entered into the trial court's decision on the original award of alimony and that the only alleged change was her inheritance from her mother, which was not material enough to warrant a termination of alimony. Joseph's attorney argued that Dana's inheritance, as well as her voluntarily increasing her investments and retirement accounts, showed that she did not have any unmet needs that alimony should fill.

The trial judge issued a letter opinion in April 2016. In it, the trial court noted that Joseph's primary contention was that Dana's inheritance from her mother constituted the material change in circumstances that warranted a modification of alimony. The trial court reiterated the division of assets in the original divorce proceedings, and it restated the substance of the parties' testimonies at the hearing. In closing, the letter opinion recited that

> [i]t is the court's opinion, that when reviewing each of the factors originally considered for the award of alimony in this case, that the subsequent inheritance received by the plaintiff is not an unanticipated material change that at this time justifies the termination or modification of the existing alimony obligation of the defendant.

A formal order was prepared to reflect the trial court's findings. The order restated Joseph's contention that with the marital home and other assets Dana received in the divorce, plus her earnings and inheritance, Dana's financial situation had improved since the divorce, such that she was able to pay her normal living expenses and save extra funds for retirement. The

formal order recited that Dana took on additional expenses for the parties' son after the divorce was granted, increasing her expenses and lessening Joseph's. The order then read as follows:

> The Court recognizes the value of the Plaintiff's inheritance definitely increased the asset valuation of the Plaintiff, and that the Defendant enjoys at least the same total net worth, but has a much greater income and earning potential than the Plaintiff. The Defendant enjoys a sizeable income, normally in excess of $400,000 annually, which is approximately five times that of the Plaintiff. Plaintiff's inheritance was contemplated in the divorce hearing and it now merely allows her to fund a retirement account more aggressively, which is the same opportunity the Defendant enjoyed for a period of time. The Plaintiff's income is still approximately the same as it was at the time of the divorce, and she has little probability of an increase in her income. The mere fact that the Plaintiff can currently fund a sufficient retirement account because of the additional alimony income is clearly a lifestyle and security factor now enjoyed and attainable by both parties. The Court also takes into consideration in denying the Defendant's Motion for Modification the testimony of the Plaintiff that expenses associated with the upkeep and maintenance on her home, which were previously paid from the Defendant's earnings, are now being paid solely from the Plaintiff's income and the testimony of the Defendant that he has relocated to Mississippi and constructed a new home with a total value exceeding that of the Plaintiff's residence. Additionally, while the Plaintiff received the marital residence in the divorce, the Defendant received, not only sole ownership of his very profitable business, but his business' office buildings and rental investment condominiums in Arkansas and Mississippi.

Joseph filed a timely notice of appeal from the final order.

Joseph argues on appeal that the trial court clearly erred in deeming the inheritance to be an anticipated change in circumstances that was considered at the time of the original alimony award. He contends that there was no proof of how large or small Dana's inheritance might be at the time of the divorce, and furthermore, the original decree did not make note of her potential inheritance. We disagree that Joseph has demonstrated clear error.

Alimony must be determined in light of the particular facts in each case. *Hix*, *supra*.

SLIP OPINION

Changes in circumstances are not material if they were contemplated at the time of the original award. *See Hass v. Hass*, 80 Ark. App. 408, 413, 97 S.W.3d 424, 428 (2003). Dana testified that the trial court was informed about her mother's impending death during the original divorce proceedings, and the trial court found that Dana's "inheritance was contemplated in the divorce hearing." Here, we were provided a limited appellate record that included only those filings entered after the decree and the transcript and exhibits from the most recent hearing. We are, therefore, unable to discern the extent of information gleaned about Dana's potential inheritance at that time. The burden is on the appellant to bring up a record sufficient to demonstrate that the trial court was in error, and where the appellant fails to meet this burden, we have no choice but to affirm the trial court. *Dodge v. Lee*, 352 Ark. 235, 237, 100 S.W.3d 707, 709 (2003). Moreover, the trial court found that it had, in fact, contemplated Dana inheriting from her mother at the time the original alimony award was given. This change in circumstance is not material, given that it was contemplated at the time of the original award. Joseph's argument holds no merit.

Next, Joseph contends that there are several factual errors made by the trial court warranting reversal. We are not persuaded that the trial court committed reversible error. The primary assertion is that the trial court erred by finding that the parties had the same net worth when it should have recognized the "undisputed evidence" that Dana's net worth was $1,333,382 whereas Joseph's was $694,136. We hold that the trial court did not clearly err. It was within the trial court's purview to determine what evidence was most credible. *See*

9

*Brown, supra.* Here, the trial court apparently accepted Joseph's claimed net worth of $694,136 and accepted Dana's claimed net worth of $735,000, which figures were not markedly disparate. It is obvious that the trial court did not believe Joseph's assertion that Dana's net worth was greater than $1.3 million.

Joseph also takes issue with the trial court's finding that he has income of more than $400,000 annually and that this is approximately five times Dana's income. This, too, was a matter of credibility and weight to be afforded the evidence. Joseph's own exhibits showed that he earned more than $400,000 annually. Although Joseph's calculation put Dana's annual income at approximately $98,000, Dana's testimony and affidavit of financial means placed her salary in the $78,000 to $80,000 range.[5] When multiplied by five, Dana's estimated income would be $390,000 to $400,000. This is compatible with the trial court's findings on this issue.

Joseph next argues that the trial court clearly erred in finding that Dana's income remained approximately the same since divorce and she had little probability of an increase in her income. We disagree. In one of Joseph's exhibits, which was a CPA's tax summary comparison of Dana's salary, the figures were $78,977 in 2014 and $77,905 in 2015. According to Dana's affidavit of financial means, her salary for 2016 would total $83,000.

---

[5]Joseph added into Dana's 2015 salary the interest income, dividend income, capital gains, and nonqualified IRA distributions, and taxable annuities. To this figure, he subtracted alimony paid to reach his estimate of $98,000 as Dana's annual income. Even accepting this income figure as accurate, five times $98,000 equals $490,000.

We discern no clear error in the trial court finding this to be relatively steady income without marked increase.

The remainder of Joseph's arguments appear to explain why the assets he received in the divorce are not as valuable as the trial court believed them to be and to explain how the trial court underestimated the value of all of Dana's assets. Joseph also argues that Dana under-reported her expenses on her Affidavit of Financial Means. These arguments essentially ask our court to be a "super fact finder," which we are not permitted to do. *See Stehle v. Zimmerebner*, 375 Ark. 446, 291 S.W.3d 573 (2009); *Dunbar v. Ark. Dep't of Human Servs.*, 2016 Ark. App. 472, 503 S.W.3d 821. Moreover, we fail to see how Dana's under reporting her expenses would be favorable to Joseph. The appropriateness of an alimony award is determined in light of the facts in each case, and the circuit court is in the best position to view the needs of the parties in connection with an alimony award. *Bennett v. Bennett*, 2016 Ark. App. 308, 496 S.W.3d 409. After a de novo review of the record in this case, we are not left with a distinct and firm impression that the trial court made a mistake or abused its discretion in rejecting Joseph's request to terminate or reduce his alimony obligation.

Affirmed.

GRUBER, C.J., and GLOVER, J., agree.

*LaCerra, Dickson, Hoover & Rogers, PLLC*, by: *Traci LaCerra*, for appellant.

*Coplin & Hardy, PLLC*, by: *Betty J. Hardy*, for appellee.