

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-17-279

| | | |
|---|---|---|
| | | **Opinion Delivered** November 8, 2017 |
| OWEN KELLY | | |
| | APPELLANT | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT |
| V. | | [NO. 72DR-13-2217] |
| MANDY KELLY | | HONORABLE JOANNA TAYLOR, JUDGE |
| | APPELLEE | |
| | | AFFIRMED AS MODIFIED IN PART; REVERSED IN PART |

## DAVID M. GLOVER, Judge

This is the third time appellant Owen Kelly has appealed an order to our court concerning alimony he has been ordered to pay his ex-wife, appellee Mandy Kelly. In *Kelly v. Kelly*, 2015 Ark. App. 147 (*Kelly I*), our court dismissed his appeal due to lack of a final order; on grant of petition for review, our supreme court held the decree of divorce was a final order and remanded the case to our court to render a decision. *Kelly v. Kelly*, 2016 Ark. 72, 483 S.W.3d 296. On remand, our court was tasked with determining whether the trial court abused its discretion (i) in setting the monthly amount of alimony initially at $9131 and (ii) in requiring Owen's initial alimony obligation to automatically increase as his child-support payments abated in order to always provide Mandy the $16,659 per month amount of support she requested, which resulted in Owen continuously paying this monthly support amount, even after his child-support obligation had ended. Our court determined the circuit court had abused its discretion on both counts; we reversed and remanded for

SLIP OPINION

the circuit court to enter an order consistent with our opinion. *Kelly v. Kelly*, 2016 Ark. App. 272, 496 S.W.3d 391 (*Kelly II*).[1]

On remand, Owen filed a prehearing brief, requesting not only a reduction of the alimony he was required to pay Mandy but also a repayment of alimony he had already overpaid. Specifically, he requested the circuit court allow him to have a credit of $1000 per month against the alimony amount he was required to pay Mandy. Mandy, in her prehearing brief, requested alimony of at least $6131 per month, which, when combined with child support, would give her $13,659 per month in total support.

At the hearing, the circuit court decreased Mandy's alimony only by the specific instances our court had listed in *Kelly II*. In its order, the circuit court further found Mandy "has an established need of $10,615.50 per month for expenses as itemized from the bench. [Owen's] current child-support obligation of $7528 per month satisfies a significant portion of the monthly need. [Owen] is therefore ordered to pay $3087.50 per month in alimony to [Mandy]." The circuit court also found that it would be inequitable to require Mandy to repay the amounts of alimony Owen had overpaid and denied his request for a credit against his alimony obligation.

Owen filed a motion to modify the circuit court's order concerning alimony, asserting the circuit court departed from our court's mandate by making a factual finding that Mandy had "an established need" for $10,615.50 per month and using his child-support obligation as a credit against Mandy's established need. While Owen specifically stated he did not object to paying monthly alimony of $3087.50, he did object to the finding that

---

[1]Our supreme court denied Mandy's petition for review on September 15, 2016.

Mandy had an "established need" exceeding $10,600 when our court had already found $9131 in monthly alimony to be excessive. Owen also asked the circuit court to reconsider giving him a credit for excessive alimony paid for thirty-two months or, at the very least, since the date of our opinion reversing the amount of alimony as excessive, especially in light of the fact Mandy had filed petitions for rehearing and review, further delaying resolution of the matter of alimony. In an order filed February 8, 2017, the circuit court denied Owen's motion to modify without explanation. Owen filed this timely appeal.

Owen makes two arguments on appeal. First, he contends the circuit court overstepped the limited bounds of our court's mandate by making a factual declaration that Mandy had established a need for $10,616.50 per month in support and then applying the child support he was paying as a setoff against, but not a reduction of, of that need to derive a figure for alimony; he asserts the circuit court's finding that Mandy had a *personal* need for $10,616.50 per month prejudices him in future litigation. Second, Owen maintains the trial court erred in denying him any credit against either future alimony payments for the excessive alimony he paid Mandy from March 2014 to October 2016, or at the very least, from the date of the appeal to our court until the case was heard on remand. Both of his arguments have merit; we affirm as modified in part and reverse in part.

*Standard of Review*

Appeals of domestic-relations proceedings are reviewed de novo, but a circuit court's finding of fact will not be reversed unless it is clearly erroneous. *Berry v. Berry*, 2017 Ark. App. 145, 515 S.W.3d 164. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that the circuit

court has made a mistake. *Id*. Due deference is given to the circuit court's superior position to determine witness credibility and the weight to be accorded to their testimony. *Id*.

The purpose of alimony is to rectify economic imbalances in earning power and standard of living in light of the particular facts of each case, and the circuit court may make an award of alimony that is reasonable under the circumstances. *Brave v. Brave*, 2014 Ark. 175, 433 S.W.3d 227. The primary factors a court should consider in determining whether to award alimony are the financial need of one spouse and the other spouse's ability to pay. *Id*. Secondary factors that may also be considered are (1) the financial circumstances of both parties; (2) the couple's past standard of living; (3) the value of jointly owned property; (4) the amount and nature of the parties' income, both current and anticipated; (5) the extent and nature of the resources and assets of each of the parties; (6) the amount of income of each that is spendable; (7) the earning ability and capacity of each party; (8) the property awarded or given to one of the parties, either by the court or the other party; (9) the disposition made of the homestead or jointly owned property; (10) the condition of health and medical needs of both husband and wife; (11) the duration of the marriage; and (12) the amount of child support (if applicable). *Moore v. Moore*, 2016 Ark. 105, 486 S.W.3d 766. The decision to grant alimony lies within the sound discretion of the circuit court and will not be reversed on appeal absent an abuse of discretion. *Dozier v. Dozier*, 2014 Ark. App. 78, 432 S.W.3d 82. A circuit court abuses its discretion when it exercises its discretion improvidently or thoughtlessly and without due consideration. *Id*. Thus, it follows that a decision whether to require repayment of an overpayment of alimony is likewise subject to an abuse-of-discretion standard.



*Mandy's Established Need of $10,616.50 Per Month*

First, it must be noted Owen has never contested the $7528 in monthly child support the circuit court ordered him to pay; in fact, in *Kelly II*, we recited that, in addition to the child support he agreed to pay, Owen further arranged to pay an additional $1000 per month for their son's private-school tuition. Likewise, Owen does not appeal the amount of alimony set by the circuit court on remand—$3087.50 per month.[2]

Before us again by appeal, Owen takes issue with the circuit court's finding that Mandy personally had "an established need of $10,616.50 per month" when, in fact, that figure is not simply Mandy's own individual need, but rather an estimate of the collective needs of Mandy and their two children. Owen contends that when Mandy next returns to court to request an increase in alimony at a time when she is no longer receiving child support, the record will already reflect that Mandy herself has a need for $10,616.50, and he will be required to prove that her need has changed. He posits there was no reason to create a "set off" of child support from the circuit court's finding Mandy had an established monthly need of $10,616.50, because over time that setoff will disappear, leaving only a factual finding of Mandy's "established need" of $10,616.50 per month. Owen maintains the circuit court erred in refusing to amend the order to reflect Mandy's alimony need for

---

[2]Even though our court found in *Kelly II* that Owen's monthly net take-home pay was between $19,975 and $20,170, the circuit court, for whatever reason, thereafter specifically found on remand that Owen's net monthly income was $36,167. This was improper. The circuit court was not asked to recalculate Owen's net monthly income—it was solely asked to set alimony. Our court determined Owen's net monthly income was, at most, $20,170—this is the figure the circuit court was required to accept on remand.

SLIP OPINION

herself was $3087.50 per month and the $10,616.50 amount represented the entire family's needs.

We hold the circuit court was clearly erroneous in refusing to clarify the support order. It was, and is, beyond question in *Kelly II* that Mandy's calculation of monthly expenses did not reflect her sole needs, but rather the financial needs of both her and the parties' two children; Mandy admitted the figures she set forth in her affidavit of financial means for food, clothing, and vacations were based on a family of four, not her current family of three, and our court ordered that those figures be reduced accordingly. Clearly, that support order did not consider only Mandy's personal financial needs, but rather the financial needs of a three-person household.

These parties have been before this court multiple times. It is our intention to make our orders as clear and precise as possible in order to avoid what we consider unnecessary litigation for the parties due to confusion or misunderstanding. To resolve further confusion between our court and the circuit court, we now hold that the circuit court shall enter an order modifying the fourth, fifth, and sixth sentences of its December 27, 2016 order to state, "It is the order and decree of the court that Plaintiff has established a need for herself and the parties' two children of $10,615.50 per month for expenses. Of this amount, Defendant's current child-support obligation is $7528 per month. Defendant is therefore ordered to pay $3087.50 per month in alimony to the Plaintiff."

*Refusal to Grant Credit for Payment of Excess Alimony*

Owen's second point on appeal is that the circuit court erred in refusing to grant him credit against future alimony payments for the excessive alimony he paid to Mandy between

March 2014 and October 2016, a period of thirty-two months. Alternatively, he argues he should, at a minimum, be granted a credit for the time between our opinion in *Kelly II* and when the circuit court heard the case on remand. We hold the circuit court abused its discretion when it found it would be inequitable to require Mandy to repay at least a portion of the excess alimony payments she received from Owen; it is money to which our court has determined she was not entitled, and we reverse the circuit court's decision on this point.

For thirty-two months—from April 1, 2014, when Owen was ordered to pay Mandy monthly alimony of $9131, until December 27, 2016, when, after being reversed by this court on appeal, the circuit court entered a new order reducing Mandy's alimony to $3087.50 per month—Owen overpaid Mandy monthly by $6043.50. After remand, Mandy was still receiving $10,616.50 per month in total support. In *Kelly II*, it was noted that Mandy had been awarded $367,000 as her equal distribution of marital property; all personal property in her possession (with the exception of two 12-piece place settings of silver awarded to Owen) and any personal property in the former marital residence; and $12,200 as her marital share of Owen's medical practice and Leasing Services of Arkansas. At the time of the divorce hearing, Mandy testified she had $350,000 remaining from the $367,000; she did not want to spend that money, but rather she desired Owen to pay alimony because that was all the money she had. She also acknowledged that the marital home was on the market; Owen was making the mortgage payments until it sold; and when the marital home sold, the net proceeds would be divided equally. It was also noted in *Kelly II* that Mandy had not pursued obtaining any type of employment.

SLIP OPINION

Owen has overpaid Mandy $193,392—$6043.50 per month from April 2014 until the end of December 2016—as our court has reduced the amount of alimony the circuit court originally set due to our decision that the circuit court abused its discretion. Owen has been required to pay Mandy money to which she is not entitled.

Our court holds that requiring Mandy to repay thirty-two months of alimony overpayments is inequitable. However, we hold that it is not inequitable for Mandy to repay the alimony overage from June 2016, when this court issued *Kelly II*, until December 2016, when the circuit court issued its new order in response to our mandate; this is a period of seven months. We find that Owen is due a repayment of alimony overage of $42,304.50 ($6043.50 x 7 months). We order repayment of this overage be accomplished by giving Owen a $1000 per month credit against his monthly alimony obligation to recoup the overpayment of alimony made to Mandy until the overage is repaid in full. We direct the circuit court to enter forthwith an order reflecting this repayment schedule.

Affirmed as modified in part; reversed in part.

HARRISON and VAUGHT, JJ., agree.

*Everett, Wales & Comstock*, by: *John C. Everett*; and *Smith, Cohen & Horan, PLC*, by: *Matthew T. Horan*, for appellant.

*Clark Law Firm PLLC*, by: *Suzanne G. Clark*, for appellee.