Cite as 2023 Ark. App. 279

# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CV-22-148

| | |
|---|---|
| DERRICK RICHARDSON<br>APPELLANT<br><br>V.<br><br>JANET CALDARERA RICHARDSON<br>APPELLEE | Opinion Delivered May 10, 2023<br><br>APPEAL FROM THE SEBASTIAN<br>COUNTY CIRCUIT COURT,<br>FORT SMITH DISTRICT<br>[NO. 66FDR-12-21 ]<br><br>HONORABLE SHANNON L. BLATT,<br>JUDGE<br><br>AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellant Derrick Richardson appeals the Sebastian County Circuit Court's order denying his motion to modify alimony. He contends that the circuit court abused its discretion by refusing to reduce his alimony obligation to appellee Janet Richardson. We affirm.

The parties were divorced by a decree entered on April 17, 2013, after twenty years of marriage. Appellant was ordered to pay appellee permanent alimony in the amount of $8,000 a month as well as child support in the amount of $10,683 a month for the parties' two children who were in appellee's custody.[1] The order specifically stated that the amount

---

[1]The child-support amount was agreed upon by the parties and was a part of a property settlement agreement. The parties have three children, but as per the agreement, the son lived with appellant. The amount of alimony was contested and had to be determined by the circuit court.

of alimony was "modifiable and will be subject to review considering the circumstances of the children aging out for purposes of child support." The decree indicated that although appellee has a master's degree in social work, she had been a stay-at-home mother for thirteen years. The circuit court found that appellee had the ability to work as a social worker and to make $35,000 yearly. The order also stated that appellant is a gastroenterologist with Cooper Clinic in Fort Smith, Arkansas, bringing home a yearly net income of approximately $600,000.

Appellant filed a motion to reduce child support and alimony on February 14, 2014. He contended that his annual net income had substantially decreased from $614,266.00 to $490,350.42 in 2013, which justified a reduction in both his alimony and child-support obligations. Appellant included a copy of his 2013 W-2 to support his contention that his income had substantially decreased since the divorce. Appellee filed a response on February 19, asking the circuit court to deny appellant's motion. The circuit court entered an order on July 17 granting appellant's motion following a hearing on May 8. As a result, appellant was ordered to pay $7,000 a month in alimony and $10,124 a month in child support. The order was amended in August; however, there was no change to the new alimony and child-support amounts.

Appellant filed a second motion to reduce alimony on July 22, 2020. He alleged that there had been a substantial decrease in his income since the 2014 orders. He also contended that the children had reached the age of majority. Appellee filed a response and counterclaim for an increase in alimony on October 23. She denied that appellant's alimony

obligation should be reduced, and she also sought to have appellant held in contempt. In her counterclaim, appellee stated that appellant's alimony to her should increase since she was no longer receiving over $120,000 yearly for child support. She also contended that appellant has failed to help with the children's college expenses even though he testified he would do so in the divorce proceeding, and that testimony was a factor the circuit court considered when making the initial alimony award. She also indicated that it was her belief that appellant's income had increased since the last modification. Appellee further maintained that she had a substantial need for an increase in alimony, including expenses for the children totaling over $340,000[2] and loans in the amount of $145,000 to cover the children's college tuition for which appellant has not contributed. She stated that her alimony should be increased due to appellant's misrepresentations to the circuit court about covering certain expenses regarding the children, which he has failed to do.[3] Appellant filed a response to appellee's counterclaim on November 2 denying the material allegations of appellee's counterclaim.

A hearing took place on September 30, 2021. Appellant testified that he was fifty-eight and in good health. He stated that he is a gastroenterologist with the Mercy Fort Smith

---

[2]This amount included college tuition, books, housing, utilities, sorority expenses, a car purchase, car insurance and repairs, and living expenses for the children.

[3]In the circuit court's letter opinion, which was incorporated by reference into the divorce decree, the circuit court stated that a factor it considered in determining the amount of alimony "is the fact that [appellant] will provide automobiles, insurance and college expenses for all three children and that this obligation will be continuing for some time as the youngest child is but 13 years of age."

Communities. He said that COVID-19 led to a 20–40 percent reduction in pay and that, although he tried to follow the directives of the circuit court, "[t]o look at your checking account and be down to $1000 is an experience no one would like to have." He said that his average net income for 2017, 2018, and 2019 was $476,712, resulting in a reduction in income since the decree of over $175,000. Appellant introduced his pay stubs for 2021, which showed that his year-to-date gross income was $337,065 and that he had paid a total of $133,583.25 in taxes, resulting in a net income of $203,481 thus far. He conceded that, at this rate, his net income for 2021 was projected to be $488,356.44, resulting in a monthly income of about $40,000. He testified that he intends to practice medicine for about ten more years. He stated that their oldest daughter is married and teaching in California; their son is unemployed and living with appellee; and their youngest daughter is a senior in college. He said that he purchased vehicles for all the children as he said he would during the divorce hearing and introduced evidence of the purchases. Appellant testified that two of their adult children are covered by his health insurance. He said that he had very little input on where his children went to college but admitted that the youngest one did ask his opinion. He said that appellee is now employed and makes close to $80,000 yearly. Appellant testified that he wanted the circuit court to "end [his] alimony at this point because it seems that [appellee is] more than capable of taking care of herself and meeting the goal and the standard that was set forth by the Court." He also indicated that he was looking at retirement and did not want to work so "feverishly."

On cross-examination, appellant testified that he recently purchased an adventure van, or camper-type motor home, for $140,000. He stated that he is married but that his wife is currently unemployed. His gross income for each check he received in 2021 was $33,609.76, resulting in a monthly income of approximately $67,000. He said that he gives $4,900 a month to the Razorback Foundation; he contributes $4,000 a month to his pension plan; and he makes monthly donations to his church. He admitted that although he filed a motion to reduce his alimony in 2020 based upon a significant decrease in his income, he did not provide his pay stubs, W-2, or tax filings for 2020 because he had not yet filed his 2020 tax return. Appellant agreed that his gross income for 2018 was $734,000; for 2019 it was $757,000; for 2020 it was unknown; and for 2021 it was projected to be at least $806,634.24. Appellant testified that "[he is] not going to continue to work as hard as [he is] and feel like [he has] to be pressured to work hard to make as much money as [he has] done]." He denied filing the motion in anticipation of retirement but said he filed it based "on how hard [he works] and what percentage that [he is] giving up." He stated that his income is much less than what it was at the time of the divorce. Appellant admitted that he testified that he would pay for the children's college tuition during the divorce but had not done so because he was not involved in the decision-making process. He stated that he was unsure if appellee asked him to pay for the children's college or if any of the children asked him to help them pay for college. He said that he has given the children cash and things like computers and laptops but has not contributed anything toward their college tuition or room and board. Appellant testified that he made thousands of dollars in donations in 2020 for

contract work on a baseball field in Fort Smith to help underprivileged youths. He stated that the balance for one of his checking accounts in August 2020 was a little over $77,000. He also admitted that he received approximately $94,000 in tax refunds in 2020 but indicated that he had to repay some of it back due to an overpayment.[4] Appellant said that he received $140,000 from his mother's estate earlier this year. He denied knowing that appellee had taken out loans to fund their children's college or why she had done so. He denied not paying the college tuition so that appellee would have to use her alimony payments to cover it.

On redirect, appellant stated that in 2017, he paid nearly $300,000 in taxes, and in 2018, he paid over $200,000 in taxes. He said that at the time of the divorce, his gross income was about $1 million. As far as the children's college tuition, appellant acknowledged that the circuit court wrote a letter before the divorce decree was entered stating that, although appellant testified that he would "provide certain items for his children, this should not be interpreted as [an] additional enforceable obligation. It is something he said he would do voluntarily." The circuit court also agreed in the letter that the statement concerning appellant's testimony should not be included in the decree. Appellant stated that when he agreed to pay the children's college tuition, he was unaware of the amount he would have to pay appellee in alimony. He said that helping underprivileged children is a priority for him because he was once where they are. He

---

[4]Appellant was unable to present proof of the repayment.

reiterated that he played no role in the children's college decisions. He indicated that $75,000 of the money he received from his mother's estate was donated to the University of Arkansas and that he also plans to donate the remainder of the money perhaps to Hunt's Park.

Appellee testified that she did not expect to have to pay for their children's college expenses because appellant had testified that he would do so. She said that she is currently employed by the LeFlore County Child Advocacy Center and has an annual gross income of $73,000. She stated that she has been made aware that the grant funding her program has been reduced and that her annual income will subsequently be reduced to $70,000. She said that she has a retirement account and that if she waits until she is sixty-seven to retire, she will receive $3,000 a month in retirement. She stated that she will also receive an additional $1,040 from Social Security. She said that she paid out of pocket for the children's tuition when she could, but she also had to take out loans to fund their college expenses. She testified that beginning in January 2022, she will have to pay $1079.30 a month toward the loans. She said that her budget is "stretched pretty thin" and that she will probably have to sell her house and downsize in order to repay the loan if her alimony is not increased. She stated that she pays taxes on her alimony. She testified that her net monthly alimony is $5329.83, resulting in her having a net monthly income of $9805. She stated that she has approximately $14,000 in monthly expenses, which includes substantial expenses for the children. She said that her net monthly income is not enough to cover her expenses and that she has to borrow money from other sources—for example, the money she

7

received from the sale of the marital home—to help cover those expenses. She stated that she has sent appellant emails asking for help paying the children's tuition, but he does not respond. She said that appellant has always been included in the children's college decisions. She testified that she has funded pretty much all the children's living expenses for college. However, she said that appellant did give $1,900 toward their son's college expenses. She stated that she has spent about $382,000 toward the children's college expenses. She said that she received $280,000 when the marital home was sold and that she has depleted all the funds from that sale. She testified that she has suffered from Bell's palsy, which is facial paralysis, since she had their youngest daughter, and she receives injections for this condition. She said that both of her knees are bad and need to be replaced, but until then, she receives cortisone injections. She also stated that her gall bladder must be removed at some point. She stated that her future surgeries will require her to be off work without pay. She said that when her alimony was reduced to $7,000, she was also receiving over $10,000 in child support. She asked the circuit court to either let her alimony remain the same or increase it by the amount she will have to repay on the loan she took out for a total amount of $8,079. She stated that she has paid the children's expenses because that is her obligation as a parent, and it is something she and appellant agreed they would do. She testified that all the children are dyslexic. She said that their son graduated in 2020, but it has been hard for him to find employment. She acknowledged that she gives him $200 a month and stated that she assumes that appellant also gives him money "every now and then."

On cross-examination, appellee stated that she understands that she is not legally obligated to pay college expenses for adult children. She said that she did include appellant in the children's college decisions and he never objected to the colleges they chose. She agreed that a lot of her expenses are related to the children. She admitted that her retirement fund was currently over $900,000. She said that she intends to use the retirement funds for herself and not access it for the children's benefit. She stated that she is almost fifty-nine and would like to be able to slow down by age sixty-seven. She admitted that her employment situation is better now than it was at the time of the divorce.

On redirect, appellee stated that over $10,000 of her monthly expenses are due to maintaining her home, bills, and insurance. She stated that she was employed in 2014 when they came to court and that her current income is only about $5,000 more a year than it was in 2014. She said that if her alimony is not increased, or if it is reduced, she will have to dip into her retirement. On recross, appellee testified that she would like to protect her retirement fund.

At the conclusion of the hearing, the circuit court directed the parties to submit posttrial briefs, findings of fact and conclusions of law, and proposed orders by October 29. The circuit court filed findings of fact and conclusions of law on November 15, essentially finding that there was no substantial change in the parties' incomes when looking at the whole picture. The circuit court stated that appellant's gross income in 2014 was $745,451 and that it is projected to be $873,853.76 in 2021 based on his current pay stubs. It also noted that appellant is no longer paying child support because all the children have reached

the age of majority and that his spending habits do not reflect a decrease in income. Additionally, the circuit court found that appellee is making a stable income of approximately $73,000. The circuit court indicated that when applying the relevant factors, there is not a significant change in the parties' situation that would require a modification of alimony. The order, also filed on November 15, denied the parties' request for a modification of alimony, denied appellee's motion for contempt, and kept alimony at $7,000 a month. Appellant filed a timely notice of appeal on December 15.

We review domestic-relations cases de novo, but we will not reverse a circuit court's finding of fact unless it is clearly erroneous.[5] A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that the circuit court has made a mistake.[6] The circuit court is in the best position to view the needs of the parties in connection with an alimony award.[7] The burden is on the appellant to bring up a record sufficient to demonstrate that the circuit court was in error, and where the appellant fails to meet this burden, we have no choice but to affirm the circuit court's order.[8] A circuit court's decision regarding alimony is a matter that lies within its sound discretion and will not be reversed on appeal absent an abuse of that discretion.[9] An

---

[5]*Hunter v. Haunert*, 101 Ark. App. 93, 270 S.W.3d 339 (2007).
[6]*Id.*

[7]*Bennett v. Bennett*, 2016 Ark. App. 308, 496 S.W.3d 409.

[8]*Berry v. Berry*, 2017 Ark. App. 145, 515 S.W.3d 164.

[9]*Chekuri v. Nekkalapudi*, 2019 Ark. App. 221, 575 S.W.3d 572.

abuse of discretion means discretion improvidently exercised, i.e., exercised thoughtlessly and without due consideration.[10]

Modification of an alimony award must be based on a material change in the circumstances of the parties, and the burden of showing such a change in circumstances is on the party seeking the modification.[11] Changes in circumstances are not material if they were contemplated at the time of the original award.[12] The purpose of alimony is to rectify the frequent imbalance in the earning power and standard of living of the parties in light of the particular facts of each case.[13] The primary factors to be considered in making or changing an award of alimony are the need of one spouse and the ability of the other spouse to pay.[14] Secondary factors that may be considered include the financial circumstances of both parties, the couple's past standard of living, the amount and nature of the parties' current and anticipated incomes, the extent and nature of each party's resources and assets, the amount of income of each that is spendable, the health condition and medical needs of

---

[10] *Id.*

[11] *Berry, supra.*

[12] *Id.*

[13] *Id.*
[14] *Id.*

each party, the duration of the marriage, the amount of child support, and the earning ability and capacity of each party.[15]

Appellant argues that the circuit court erred by denying his motion to reduce his alimony. He contends that when the alimony was reduced in 2014, his net income was $659,975 and that in 2021, his net income was projected to be $488,356.40, "which is a reduction of over $150,000.00 annually." He also argues that in 2014, appellee was unemployed, but she now makes $73,000 a year and has accumulated almost $1 million in retirement. He maintains that he should not have to continue to pay alimony because appellee has chosen to pay college expenses for their grown children. He contends that his alimony should be reduced because (1) his income has decreased by over $150,000 a year since the entry of the July 2014 orders; (2) appellee's employment status has changed since the 2014 orders whereby she is now employed and making $73,000 a year; (3) the parties' children have reached the age of majority; and (4) appellee has a retirement fund of approximately $1 million.

To the extent appellant argues that his annual net income has deceased since 2014 by over $150,000, the circuit court chose to look at the gross income instead of the net income for the relevant years. Since the court was not provided with any income information for 2020, it relied on appellant's pay stubs through May 2021 and determined that, on the basis of that information, appellant was receiving more gross income than what he received

---

[15]*Johnson v. Cotton-Johnson*, 88 Ark. App. 67, 194 S.W.3d 806 (2004).

in 2014. It was up to the circuit court to determine which income amount, gross versus net, more appropriately reflected appellant's income for the relevant years, and it decided to use the gross-income amounts. The circuit court was in the best position to make this determination, and we will not reweigh the evidence based on a net income analysis that seems more favorable to appellant. It is not our duty to substitute this court's judgment for that of the circuit court.[16]

Appellant contends that appellee's employment income negates her need for alimony. Despite appellant's contention that appellee was unemployed at the time of the 2014 modification, she testified otherwise. She stated that in 2014, she was making $5,000 less than what she is making now, so she earned around $67,000. Appellant did not object to this testimony or present any evidence to contradict it. We do not have the testimony from the hearing held at the time of the modification, and there is no way of knowing if that information was disclosed at that hearing. Additionally, the 2014 order does not mention appellee's employment status. Thus, the facts presented to the circuit court show that appellee's income has increased by $5,000 since the last modification. This is not a significant enough increase to allow appellant to reduce or even terminate his alimony.

Appellant argues that his alimony should have been reduced because their children have reached the age of majority. Although the parties' children have reached the age of majority, appellee still provides for them financially. However, she no longer has the benefit

---

[16]*Nauman v. Nauman*, 2023 Ark. App. 41, 660 S.W.3d 598.

of the $10,000 a month child support she received from appellant. Despite this, she still has undertaken the children's educational and other needs, which is not unusual. Appellee lost $120,000 a year in child support when the children reached majority, yet she still financially supported them past majority, going so far as to take out loans to cover their college tuition and living expenses when appellant did not honor what he said he would do. Appellee's expenses alone were over $10,000 a month, not including the monthly amounts she expends on the children. She has had to deplete the moneys received from the sale of the marital home in order to continue to meet her financial obligations.

Appellant also maintains that his alimony should be reduced because appellee has a large retirement fund. Appellee testified that she has over $900,000 in her retirement fund that she plans to use when she retires at the age of sixty-seven. She indicated that she did not want to access those funds prior to that time and that she would only be receiving a little over $4,000 a month from her retirement and Social Security when she retires. The circuit court considered this evidence and still found that there was not a significant change in circumstances to require modification of alimony.

The circuit court was asked to decide whether the facts and circumstances of this case required a modification of appellant's alimony and ultimately determined that it did not. Alimony is based on the need of one spouse and the ability of the other spouse to pay. Appellee testified that her income is not enough to cover her expenses even though she receives the $7,000 a month in alimony in addition to her income from work. She has had to deplete the money she received from selling the marital home in order to help cover her

14

expenses. Although appellant contends that his income has decreased, the circuit court found that it had increased and that his spending did not reflect a reduction in income. Therefore, the circuit court essentially found that appellee still had a need for the $7,000 in alimony, and appellant still had to ability to pay that amount. The burden was on appellant to show that circumstances had changed resulting in the need for a modification of alimony, and he failed to meet this burden. Thus, the circuit court did not abuse its discretion by denying appellant's motion to modify alimony. Accordingly, we affirm.

Affirmed.

KLAPPENBACH and BARRETT, JJ., agree.

*Gean, Gean & Gean*, by: *Roy Gean III*, for appellant.

*Bryant Law Partners, LLC*, by: *Veronica L. Bryant*, for appellee.