BART F. VIRDEN, Judge
Appellant Lakshiminarayana Chekuri appeals the divorce decree entered by the Pulaski County Circuit Court dividing property and awarding rehabilitative alimony to appellee Madhuri Nekkalapudi. On appeal, appellant argues that the trial court erred in (1) awarding appellee $ 68,415.50, which represented one-half of the amount appellant spent after the parties had separated; (2) equally dividing the funds that appellant spent after the parties had separated and the funds in appellant's retirement account; and (3) awarding appellee rehabilitative alimony. We affirm in part and reverse in part and remand for further proceedings.
I. Factual and Procedural Background
The parties were married in India on February 12, 2015, as a result of an arrangement by their families. They did not live together the first month of their marriage. In March 2015, appellant moved back to Arkansas to finish his residency at UAMS and his PhD courses at the University of North Texas. Appellee stayed in India, where she finished medical school. She moved to Arkansas in May 2015. From May 2015 to December 2015, the parties lived together for approximately five and a half months. During the marriage and up to the date of the parties' separation, appellant worked at UAMS as a resident earning $ 4,800 to $ 5,000 a month. Appellee did not work. Six months after the parties separated, appellant accepted a job at Mercy Clinic in Joplin, Missouri, earning an annual salary of $ 250,000 and receiving a $ 30,000 bonus. He was also working toward his doctoral degree at the University of North Texas.
In December 2015, appellee moved to Virginia to attend a Kaplan course to obtain her American medical degree. She intended to return to Arkansas after she completed the course in May 2016; however, on April 21, 2016, appellant filed for divorce. On that same day, the trial court entered a restraining order enjoining the parties from selling or otherwise disposing of any property belonging to the parties.
On October 24, 2016, the trial court held a hearing. At the hearing, appellee testified that she is a United States citizen but that appellant is not. She stated that appellant had asked her to sponsor him for a green card. Appellee further testified that appellant had verbally and physically abused her beginning in June 2015. She explained that her father currently paid for her living expenses but that he expected her to pay him back. Thereafter, the trial court entered a temporary order directing appellant to pay appellee $ 2,500 a month in alimony.
On August 3, 2017, the trial court held a final hearing. Appellee testified that she was living with her parents and that she was working for her father while completing the Kaplan program. She stated that her monthly income was $ 540, that her monthly expenses totaled $ 4,407, and that her debt exceeded $ 100,000. She testified *575 that she had not completed the necessary examinations to obtain her American medical degree. She further noted that she had not sought other employment in the past six months. Appellee stated that appellant had agreed to financially support her while she obtained her American medical degree. She further testified that she had possession of the $ 25,000 necklace that appellant had given her as a customary wedding gift. Appellee introduced appellant's bank statements into evidence, which showed that he had made cash withdrawals of $ 3,670 in 2013, $ 4,402 in 2014, $ 20,645 in 2015, and $ 86,420 in 2016.
Appellant testified that he worked at Mercy Hospital, his annual salary was $ 270,504, and his monthly expenses totaled $ 18,559. He noted that he hoped to complete the PhD program by the end of the year. He denied having any financial accounts in India, and he explained that he had transferred money to India around the time of his marriage to cover expenses for the wedding. Appellant further testified that he had transferred $ 86,000 in 2016 to repay a loan. He noted that for wedding gifts, he had given appellee a $ 25,000 gold necklace and an $ 18,000 gold ring. He further testified that since their separation, he had spent money on his PhD research, relocation expenses, rent in Joplin, housing expenses in Arkansas, and student and personal loans.
On March 19, 2018, the trial court entered a divorce decree. In the decree, the trial court awarded appellee one-half of appellant's retirement contributions from February 12, 2015, through the date of the decree. Appellant's retirement account totaled $ 21,321.99. The trial court further ordered appellant to pay appellee $ 68,415.50, representing one-half of the marital funds he had spent during the parties' separation, and $ 1,000 a month in spousal support for eighteen months. The trial court further awarded appellee all the jewelry that appellant had given her. Appellant timely appealed from the decree.
II. Discussion
A. Property Division
This court reviews division-of-marital-property cases de novo. Sanders v. Passmore , 2016 Ark. App. 370, 499 S.W.3d 237. With respect to the division of property in a divorce case, we review the trial court's findings of fact and affirm them unless they are clearly erroneous or against the preponderance of the evidence. Id. A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been made. Id.
Appellant first argues that the trial court erred by awarding appellee one-half of the marital funds that he spent during their separation. He recognizes that he spent all the money he had earned during the separation but asserts that Arkansas law allows him to do so. He argues that appellee was entitled to the funds only if she proved that he spent the money with the intent to defraud her. He asserts that appellee did not prove fraud and that the trial court did not make a finding of fraud.
Arkansas law does not require parties to a divorce to account for every sum spent during a marriage. Chism v. Chism , 2018 Ark. App. 310, 551 S.W.3d 394. Our courts have held that a spouse has the right to transfer his or her property, with or without consideration, as long as the spouse does so in good faith and without the intent of defrauding the other spouse. Skokos v. Skokos , 332 Ark. 520, 968 S.W.2d 26 (1998) ; Wainwright v. Merryman , 2014 Ark. App. 156. A spouse is not entitled to be reimbursed in a divorce proceeding for every nonconsensual transfer of marital funds made by the other spouse in the absence of proof of an intent *576 to defraud. Chism, supra. In Chism , this court reversed a trial court's award of one-half of the wife's income and retirement to the husband, even though the wife had held the funds in a separate account. This court reasoned that there was no evidence that the wife had concealed or disposed of her income in an attempt to defraud the husband. Further, the trial court did not find fraud.
Appellee asserts that Wainwright , Skokos , and Chism are not controlling and argues that, while there was no evidence of fraud in those cases, there is in the instant case. She points to evidence that appellant spent significantly more money after the separation than he did before the separation, that he converted cash to gold, that he sent money to family in India, and that he spent unreasonable amounts of money on research. These arguments were made to the trial court in the context of asserting that appellant had improperly disposed of marital funds, one-half of which should be returned to appellee. The trial court did, in fact, order appellant to return one-half of the funds at issue to appellee in the sum of $ 68,415.50. On appeal, appellee urges that appellant's expenditures and cash withdrawals were with the intent to defraud her and were in violation of the trial court's order against disposing of marital funds.
While it may be clear from the trial court's statements and findings that it was balancing equities in this divorce case-a task that we have repeatedly recognized and given great deference to-nowhere in appellee's pleadings below or in any of the trial court's findings can we find the word "fraud" or any of its derivatives. Such a finding is an absolute requirement under the trilogy of cases cited above.
Alternatively, appellee relies on Williams v. Williams , 82 Ark. App. 294, 108 S.W.3d 629 (2003) ; however, her reliance on that case is misplaced. There, the husband had asked the court to make an unequal distribution of marital property based on the husband's spending during the marriage that he claimed was marital debt. The court refused in part based on findings that the husband had hidden money ($ 800,000) from the wife to spend on his girlfriends, his illegitimate children, and his sisters. Again, in the case now before us, there are no findings by the trial court that appellant hid money from appellee. Accordingly, we hold that the trial court clearly erred in awarding appellee one-half of the money appellant spent during the parties' separation in the absence of a finding of fraud or bad faith.
For his next point on appeal, appellant argues that the trial court erred by awarding appellee one-half of his retirement account. He points out that his retirement account was created when he took the job at Mercy Hospital and that he had obtained that job after he filed for divorce. He further points out that he and appellee maintained their separate lives and property during the short marriage and that appellee did not contribute to his ability to obtain an advanced earning capacity. He asserts that the award essentially punishes him for working hard and rewards appellee for not finding employment.
Under Ark. Code Ann. § 9-12-315 (Repl. 2015), all marital property shall be divided equally between the parties unless the trial court finds that such a distribution would be inequitable. See Ark. Code Ann. § 9-12-315(a)(1)(A). Section 9-12-315 requires that the trial court consider the following factors when making an unequal distribution of marital property:
(i) The length of the marriage;
(ii) Age, health, and station in life of the parties;
(iii) Occupation of the parties;
(iv) Amount and sources of income;
*577 (v) Vocational skills;
(vi) Employability;
(vii) Estate, liabilities, and needs of each party and opportunity of each for further acquisition of capital assets and income;
(viii) Contribution of each party in acquisition, preservation, or appreciation of marital property, including services as a homemaker; and
(ix) The federal income tax consequences of the court's division of property.
Ark. Code Ann. § 9-12-315(a)(1)(A)(i)-(ix).
The trial court heard testimony and received evidence at four hearings before the final hearing; therefore, the trial court had a great opportunity to determine the credibility of the witnesses. Further, the trial court determines the weight to assign each of the factors. The trial court considered the relevant factors and determined that the retirement account was created during the marriage, that it was marital property, and that each party was entitled to one-half. We cannot say that the trial court clearly erred in its decision to award an equal distribution of this property given the presumption in Ark. Code Ann. § 9-12-315(a)(1)(A).
B. Alimony
A trial court's decision regarding alimony is a matter that lies within its sound discretion and will not be reversed on appeal absent an abuse of that discretion. Evtimov v. Milanova , 2009 Ark. App. 208, 300 S.W.3d 110. An abuse of discretion means discretion improvidently exercised, i.e., exercised thoughtlessly and without due consideration. Id. The trial court is in the best position to view the needs of the parties in connection with an alimony award. Id.
Appellant urges us to reverse the trial court's award of alimony. On this point, appellant argues that the trial court erred in awarding appellee rehabilitative alimony because before the parties' separation, he was a resident physician in training earning little money, and appellee was an unemployed medical student earning no money. Appellant argues that these facts, plus the fact that the parties had a low standard of living, weigh against rehabilitative alimony in this case because there is no "bridge to gap" since appellee is in the same position now as she was during the marriage-she is an unemployed medical-school graduate. He also argues that any bridging of the gap that appellee may need was satisfied by the temporary order's alimony award of $ 2,500 a month, which she received for twelve months, totaling $ 30,000.
The primary factors in determining alimony are the financial need of one spouse and the other spouse's ability to pay. Page v. Page , 2010 Ark. App. 188, at 4, 373 S.W.3d 408, 410. The trial court may also consider other factors, including the couple's past standard of living, the earning capacity of each spouse, the resources and assets of each party, and the duration of the marriage. Id. The purpose of alimony is to rectify the economic imbalance in earning power and standard of living of the parties to a divorce in light of the particular facts of each case. Id.
Rehabilitative alimony is alimony that is payable for a short, specified duration of time. Id. at 5, 373 S.W.3d at 410 ; Ark. Code Ann. § 9-12-312(b)(1). The primary purpose of rehabilitative alimony is to afford the recipient a specific period of time in which to become self-supportive. Page, supra.
If we were to review this finding on its own or in a vacuum, we would likely affirm the alimony award. However, as we have repeatedly noted, alimony and the division of marital property are often so *578 intertwined in order to balance the equities of the parties that a change in one may necessitate an adjustment in the other. "Alimony and property divisions are complementary devices that a trial [court] employs to make the dissolution of a marriage as equitable as possible." Evtimov , 2009 Ark. App. 208, at 7, 300 S.W.3d at 115. Here, the trial court made just such an evaluation and stated the factors that it considered. Given that we reverse the award of $ 68,415.50, some of those factors may-and we emphasize may -need to be reevaluated. We thus remand the case for the trial court to reconsider the alimony award.
Affirmed in part; reversed in part and remanded.
Abramson and Vaught, JJ., agree.