Cite as 2019 Ark. App. 513

# ARKANSAS COURT OF APPEALS

DIVISION III

**No.** CV-18-1063

| | | |
|---|---|---|
| | | **OPINION DELIVERED:** NOVEMBER 6, 2019 |
| ERIC RAY CARR | APPELLANT | APPEAL FROM THE JOHNSON COUNTY CIRCUIT COURT [NO. 36DR-16-184] |
| V. | | HONORABLE GORDON W. "MACK" MCCAIN, JR., JUDGE |
| MARANDA LYNN CARR | APPELLEE | AFFIRMED |

## ROBERT J. GLADWIN, Judge

Appellant Eric Carr appeals the divorce decree entered by the Johnson County Circuit Court in favor of appellee Maranda Carr on her counterclaim for divorce on the basis of general indignities. Eric argues that the circuit court erred in unequally allocating the marital liabilities, in awarding rehabilitative alimony to Maranda, and in failing to consider the relevant factors in awarding her permanent alimony. We affirm.

## I. *Facts*

The parties were married on September 2, 2000, and separated on August 15, 2016. Eric filed for divorce on September·1, and on September 7, Maranda filed her answer and counterclaim. Considering the length of the parties' marriage, the parties' financial circumstances, and other factors, Maranda requested both temporary and permanent spousal support from Eric.

Prior to the hearing on January 24, 2018, counsel for the parties announced that the parties had reached an agreement on all issues except alimony, attorney's fees, and court costs. The parties' property-settlement agreement was read into the record with no objection, and counsel stipulated that the property had been equally divided between the parties. Eric's counsel advised the circuit court that it would not need to look at the values of the property when making its decision on alimony because everything was settled. The parties' agreement was filed on February 6.

During the hearing, the circuit court heard testimony from Doris Davis, a certified public accountant, who testified as an expert for Maranda. Ms. Davis testified that she was familiar with the parties' respective earnings during the marriage, the tax consequences concerning an award of alimony, the parties' respective spendable incomes, and Eric's ability to pay alimony. Maranda testified as to her need for alimony, the standard of living to which she had become accustomed during the parties' sixteen-year marriage, and other factors regarding her request for alimony. Eric testified that since 2011, his income was at least twice that of Maranda's, and in certain years, three times more.

The circuit court found that the property-settlement agreement was equal despite Eric's objections at the hearing that the division of liabilities was unequal. The circuit court ordered Eric to pay Maranda permanent alimony of $265.35 a week based on Eric's making $885 a week and Maranda's making $354.61 a week. The amount was to give both parties an equal amount of $619.96 each week. Alimony was to be paid retroactively from the date of separation until Maranda remarries, lives with someone tantamount to marriage, or dies.

Temporary rehabilitative alimony was awarded to Maranda for three years, to be calculated at the end of the year by taking Eric's net bonuses and subtracting Maranda's net bonuses and splitting the difference on a fifty-fifty basis. After the three-year period, the split of the bonus difference will constitute permanent alimony, but at a reduced amount—23.49 percent—the same percentage as the difference between weekly incomes of each party. It is to terminate upon the same conditions as permanent alimony.

The divorce decree was filed April 19, and Eric filed a timely notice of appeal on May 21.[1] On May 31, he also filed a notice of appeal from the May 2 deemed-denied ruling on his motion to reconsider the divorce decree that was filed on April 1.[2]

## II. *Standard of Review and Applicable Law*

Arkansas appellate courts review divorce cases de novo on the record. *Moore v. Moore*, 2019 Ark. 216, at 6, 576 S.W.3d 15, 20. The circuit court's findings pertaining to the division of property will not be reversed unless they are clearly erroneous or against the preponderance of the evidence. *Id*. A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Id*. at 7, 576 S.W.3d at 20. We also give due deference to the circuit court's determination of the credibility of the witnesses and the weight to be given to their testimony. *Id*. This court will not substitute its judgment for that of the circuit court, which

---

[1]The decree was entered on April 19—making the thirty-day deadline for appeal May 19. Because that was a Saturday, the notice of appeal was timely filed on May 21.

[2]Eric filed an amended notice of appeal on June 11 correcting the filing date of his motion to reconsider from April 1 to April 2.

observes witnesses firsthand. *Riddick v. Harris*, 2016 Ark. App. 426, at 5, 501 S.W.3d 859, 865.

### III. *Discussion*

#### A. Division of Marital Liabilities

Despite the previous entry without objection of the parties' property-settlement agreement and the parties' initial statements that the property received by each was equal in value, Eric protested several times at the hearing that the allocation of the marital liabilities was unequal. Eric explained to the circuit court that "[i]n the Property Settlement, I took most of the debt to be nice." The parties testified as to their respective opinions regarding the value of their own personal property throughout the hearing. Eric received the marital home that had been appraised at between $110,000 and $130,000; however, there were two mortgages attached to the property that totaled $105,000 at the time of the hearing. Eric had made the payments on the property from several months before the separation up to the time of the hearing in the amount of $750 a month plus insurance and taxes. He reduced the mortgage by approximately $13,000 before the hearing. Based on these figures, the house had no equity.

Eric claims that he took this responsibility because he built the home himself and had a very special feeling toward it. Maranda, conversely, had wanted to sell the property. Eric also received a 1979 Jeep, a Case knife case, a 2004 Ford, a television, his tools, two knives, and two guns, all worth approximately $5,000. He received one-half of his retirement of $116,000, and half of the Merrill Lynch accounts that consisted of his stocks and bonuses. He assumed liability for a Visa card in the amount of $7,629.92.

Maranda received inherited property consisting of three lots—two of which have houses on them. Testimony indicated that the rent is paid to her brother despite their owning the property together; accordingly, the circuit court did not include rent in her income. Maranda also received most of the household furniture, the Ducks Unlimited artwork, the Beer pottery, a Case knife collection, a gun collection, a glass-bottle collection, a 1981 CJ 5 Jeep, a Dixie mower, and a sixteen-foot trailer. These items were valued at approximately $30,000. She received one-half of Eric's retirement and half of the Merrill Lynch accounts in the amount of $6,392.36. Maranda was awarded her 401k account in full, currently valued at $18,946.79, and she waived her right to Eric's bonuses in exchange. The only liability Maranda assumed was a Discover card in her name in the amount of $10,617.

Eric notes that he did not receive any liquid assets. He maintains that he purposely entered into the property-settlement agreement so that the property received by both was equal, yet he argues that his payment of the mortgage, insurance, taxes, and bills related to the home should have been considered by the circuit court because he was ensuring that Maranda was not burdened by liabilities and had adequate means to support herself.

We hold that the circuit court did not clearly err in enforcing the parties' property-settlement agreement. Both parties were represented by counsel, and the property-settlement agreement clearly provides that each party entered into it

> upon mature consideration and after a careful review of the provisions contained [t]herein; that the execution of this Agreement by them has not been obtained under duress, fraud, or undue influence of any person; that no representations of fact have been made by either party to the other except as herein expressly set forth; that Plaintiff and Defendant have adequate knowledge of the business and affairs of the other; and that this Agreement is fair and reasonable.

5

It is well established that when parties enter voluntarily into an independent property-settlement agreement that is incorporated into a decree of divorce, it cannot subsequently be modified by the court. *Tiner v. Tiner*, 2012 Ark. App. 483, at 8, 422 S.W.3d 178, 183 (citing *Gentry v. Gentry*, 327 Ark. 266, 938 S.W.2d 231 (1997)). Property-settlement agreements, especially after approval by a circuit court, are considered binding and final contracts between the parties. *Id.* The terms of the property-settlement agreement were undisputedly agreed on by the parties, and the agreement was read into the record without objection. It was filed with, and approved by, the circuit court. The fact that Eric entered into an agreement that later appeared improvident to him is no ground for relief. *See id.*

## B. Alimony

A circuit court's decision regarding alimony is a matter that lies within its sound discretion and will not be reversed on appeal absent an abuse of that discretion. *Chekuri v. Nekkalapudi*, 2019 Ark. App. 221, at 8, 575 S.W.3d 572, 578. An abuse of discretion means discretion improvidently exercised, i.e., exercised thoughtlessly and without due consideration. *Id.* The circuit court is in the best position to view the needs of the parties in connection with an alimony award. *Id.*

An award of permanent alimony is authorized under Arkansas Code Annotated section 9-12-312(a) (Repl. 2015), which provides that when a decree of divorce is entered, the circuit court may enter an order concerning alimony that is reasonable taking into consideration the circumstances of the parties and the nature of the case. An award of rehabilitative alimony is set out in Arkansas Code Annotated section 9-12-312(b).

The purpose of alimony is to rectify the economic imbalance in the earning power and standard of living of the divorcing parties in light of the particular facts of each case. *Nauman v. Nauman*, 2018 Ark. App. 114, at 7, 542 S.W.3d 212, 216. The primary factors are the financial need of one spouse and the other spouse's ability to pay, but other factors are the circumstances of the parties; the couple's past standard of living; the value of jointly owned property; the amount and nature of the income, both current and anticipated, of both parties; the extent and nature of the resources and assets of each party; the amount of each party's spendable income; the earning ability and capacity of both parties; the disposition of the homestead or jointly owned property; the condition of health and medical needs of the parties; and the duration of the marriage. *Williams v. Williams*, 2018 Ark. App. 79, at 12–13, 541 S.W.3d 477, 484. There is no mathematical formula or bright-line rule in awarding alimony because the need for flexibility outweighs the need for relative certainty. *Nauman, supra.* If alimony is awarded, it should be an amount that is reasonable under all the circumstances. *Williams, supra.*

### 1. *Permanent alimony*

The circuit court found that Eric's weekly income was $885.30, and Maranda's weekly income was $365.94. The circuit court awarded her permanent alimony of $265.34 a week, thus equalizing their incomes at $619.95 a week. This payment was ordered retroactive to the date of separation and to continue until Maranda remarries, lives with someone tantamount to marriage, or dies. Eric argues that the circuit court's award reduced alimony to a mathematical formula to simply make the parties' incomes equal and did not

consider any other factors as supported by case law. *See Spears v. Spears*, 2013 Ark. App. 535, at 6.

We hold that the circuit court did not simply calculate the award of alimony solely on the basis of a mathematical formula. The record before us indicates that the circuit court heard evidence of Maranda's need, Eric's ability to pay, the spendable incomes of the parties, and Maranda's standard of living to which she had become accustomed during the marriage, as well as other evidence. The circuit court even recalled Ms. Davis, Maranda's expert, to ask questions specifically related to her area of expertise. The circuit court then took all the information and used a percentage to calculate the amount of alimony Maranda would receive from Eric. Although the circuit court did not note it was basing its award of alimony on the evidence that was presented regarding the secondary factors, it was not mandatory for the circuit court to even consider them. *Trucks v. Trucks*, 2015 Ark. App. 189, 459 S.W.3d 312. Rather, they are factors that a circuit court "may consider" in determining whether to award alimony, and the circuit court was not required to set out the factors in the decree of divorce. *Id*.

To the extent that Eric seems to argue that the parties' circumstances could change in the future, making the award of alimony unreasonable, we note that an award of alimony can be modified when there is a change in circumstance of the parties. *See id*. If Eric subsequently petitions the circuit court to modify the award of alimony, the circuit court will hear evidence and determine whether the alimony should be modified or terminated.

## 2. *Rehabilitative alimony*

Arkansas Code Annotated section 9-12-312(b)(1) states "that alimony may be awarded under proper circumstances concerning rehabilitation to either party in fixed installments for a specific period of time," and subdivision (b)(2) states that "when a request for rehabilitative alimony is made to the court, the payor may request or the court may require the recipient to provide a plan of rehabilitation for the court to consider in determining (a) whether or not the plan is feasible, and (b) the amount and duration of the award."

Arkansas case law has defined rehabilitative alimony as "alimony payable for a short but specific period of time which will cease when the recipient in the exercise of reasonable efforts is in a position of self-support." *Rawls v. Yarberry*, 2018 Ark. App. 536, at 9, 564 S.W.3d 537, 543. Our courts have analyzed the concept of rehabilitative alimony using the same factors that apply to permanent alimony. *Id*. We have stated that the purpose of alimony is to rectify the economic imbalances in earning power and standard of living in light of the particular facts in each case. *Id*.

Eric first argues that the circuit court's decision to award Maranda three years of rehabilitative alimony is an error. First, pursuant to the property-settlement agreement, Maranda waived her right to his bonuses, and he did not receive any of her 401k plan that was then valued at $18,946.79. Maranda's counsel read this fact into the record, but Maranda later executed a "Qualified Domestic Relations Order" giving her one-half of the Merrill Lynch accounts, which included Eric's stocks and bonuses. Eric argues that by giving her part of his bonuses as alimony, Maranda is receiving money again for what she has already

received. We disagree. Eric confuses the contractual provisions of the property-settlement agreement—specifically Maranda's waiving her right to an interest in a marital asset—with the circuit court's ability to consider factors such as earning ability and bonuses in its calculation of alimony. We hold that the circuit court did not clearly err in its calculation.

Further, Eric submits that the award of one-half the difference between his bonus and her bonus for three years is against the public policy behind the need for rehabilitative alimony. That policy provides for such payment to help the other party further his or her education or obtain training to reenter the workforce. Eric argues that because Maranda has worked at Walmart for eighteen years, has some college education, and has worked as a supervisor,[3] she has the same opportunities to advance that he has. She receives bonuses and cost-of-living increases in her current position. Eric argues that she can increase her hours as an associate or apply for a new supervisor position. He claims that the award by the circuit court gives her no incentive during the period in which she receives rehabilitative alimony to obtain a better job or further her career.

Eric submits that there is no testimony that Maranda has any kind of plan to obtain additional education or training to further her career. He maintains that she did not provide a valid reason or need for rehabilitative alimony so that she can reenter the workforce or further her employment opportunities. To the contrary, Eric notes Maranda's testimony: "I have stayed an hourly employee and have not been looking to move up where I used to be

---

[3]Maranda worked at Walmart as a supervisor until she suffered a collarbone injury. She took a year off while Eric fully supported her, and then she returned to work as an associate working thirty-two hours a week.

because I like where I am even though it is lesser money." Accordingly, Eric argues that the award of rehabilitative alimony is against the intended purpose of assistance to reenter the workforce or obtain education to become employed.

We disagree. Ms. Davis, the accountant who testified as an expert, stated that she was familiar with the parties' respective incomes, provided information on the parties' respective spendable incomes, and opined regarding the benefit to Eric if he paid alimony on the basis of the IRS tax code. Ms. Davis explained to the circuit court the figures that Eric should pay and Maranda should receive in order to balance their incomes.

The evidence before us indicates a large disparity in the parties' respective incomes. Since 2011, Eric has earned more than double what Maranda has earned, and in multiple years, Eric's income tripled that of Maranda's. Eric testified that for at least the past six years, he received bonuses that sometimes amounted to as much as $18,000 a year. Evidence was also presented as to the standard of living to which the parties were accustomed.

Moreover, we find no merit in Eric's contention that the circuit court erred in awarding rehabilitative alimony to Maranda because she failed to present a rehabilitative plan containing concrete goals and requirements that she must meet in order to become self-sufficient. Section 9-12-312(b) does not mandate that a rehabilitative plan be submitted or approved; instead, the statute states that a plan "may" be requested by the payor or required by the circuit court. *See Foster v. Foster*, 2016 Ark. 456, at 10, 506 S.W.3d 808, 815. However, like the appellant in *Foster*, Eric made no such request in this case.

Eric is asking this court to reweigh the evidence in his favor. It is not this court's duty to substitute its judgment for that of the circuit court. *Trucks*, *supra*. Rather, it is for us

to determine whether the circuit court abused its discretion in finding that Maranda was entitled to the awards of alimony. Based on our standard of review, the discretionary nature of alimony awards, and the evidence before the circuit court, we hold that the circuit court did not abuse its discretion. Accordingly, we affirm.

Affirmed.

MURPHY and BROWN, JJ., agree.

*Iris L. Muke, Inc.*, by: *Iris L. Muke*, for appellant.

*Veach Law Firm, P.A.*, by: *Robert M. Veach*, for appellee.