Cite as 2023 Ark. App. 41

# ARKANSAS COURT OF APPEALS
## DIVISIONS II, III & IV
### No. CV-21-527

| | |
|---|---|
| MICHAEL NAUMAN<br><br>APPELLANT<br><br>V.<br><br>RENE NAUMAN<br><br>APPELLEE | Opinion Delivered February 8, 2023<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, THIRTEENTH DIVISION<br>[NO. 60DR-15-879]<br><br>HONORABLE W. MICHAEL REIF, JUDGE<br><br>AFFIRMED |

**BART F. VIRDEN, Judge**

Michael Nauman appeals the Pulaski County Circuit Court's order denying his motion to cease alimony. This is the second time the issue of alimony pursuant to the Nauman's divorce has come before our court. In *Nauman v. Nauman*, 2018 Ark. App. 114, 542 S.W.3d 212, this court affirmed the circuit court's award of temporary alimony as well as the court's distribution of property. We affirm.

### I. *Relevant Facts*

Michael and Rene Nauman were divorced in November 2016 after nineteen years of marriage.[1] At the time of the divorce, the Naumans had two minor children, ages fourteen and seventeen, and the parents were awarded "legal joint custody," although Rene had

---

[1]The Naumans separated and lived apart for two years prior to the divorce.

primary custody and Michael had standard visitation. In the divorce decree, Michael was ordered to pay $9100 a month in child support until the children were eighteen based on the Arkansas Family Support Chart and Guidelines. The court found that the appropriate amount of alimony was $3500; however, the court imputed income to Rene of $1000 as her potential monthly income and ordered Michael to pay $2500 in alimony. At the time of the divorce, Rene was not employed and was not seeking employment.

In the divorce decree, the circuit court found that

> with two school-age children with which the Plaintiff is heavily involved and the Defendant who is only able to be here some, only working part-time right now is feasible for the Plaintiff. The Court does not tell the Plaintiff to work part-time but thinks she could obtain work without any harm to the children, obtaining work would perhaps benefit the children and the Plaintiff, and such work could be increased as the children leave home. Therefore, the Defendant shall pay spousal support of Two Thousand Five Hundred Dollars ($2500) per month directly to the Plaintiff. Such award is subject to review in four years.

> The Court agrees that alimony may need to be stepped up in the future, but it's four years until the Plaintiff loses child support, and the Court is just not going to try and predict that far out. If in four years the Plaintiff wants to come in and [1] show she needs more, and [2] he's still earning at the same rate, and [3] the Plaintiff is making some reasonable efforts to gain employment or prepare herself for employment, the Court can look at it at that point, but the Court is not going to make those kind of assumptions that far ahead. The Court knows that's not a lot of alimony, but in most cases it would be a huge amount of alimony. It's not a lot of alimony in this case. And the reason for that is the Plaintiff is getting a large amount of child support, the court believes, after looking at the Defendant's exhibits, the Plaintiff has the ability to draw a substantial sum of money in excess of $85,000. The Court appreciates the basic assessment that the reason the returns of the Parties have been relatively low up to now is that so much of the investments have been in savings accounts. . . . But the Court does believe that there are some investment vehicles that carry some risk, as all things do, but that would provide the Plaintiff income in excess of what she's getting now. So, all those things went into the Court's calculation that alimony should be kept at what, for this case, is a low level.

This court affirmed the award of alimony on appeal, holding that the circuit court performed the required analysis and considered the facts, testimony, and evidence. *Id.*

On January 27, 2020, Michael filed a motion to terminate alimony, asserting that their son was twenty years old and in college, and their daughter was eighteen and would be graduating from high school in May. Michael contended that Rene's income had increased, her expenses had decreased, and she had chosen not to seek employment. Rene responded, requesting an increase in alimony, arguing that Michael's income and net worth had substantially increased, and his child-support obligation would terminate in May. Rene submitted an affidavit of financial means (AFM) claiming around $30,000 in monthly expenses. Later Rene filed a second AFM, modifying the amount of her monthly expenses to $39,333.44.

At the June hearing, Rene testified that although their children were over eighteen, they still required support. Both children were in college out of state, and she paid for their car insurance, including the insurance on a new Toyota Tacoma that Michael had leased for their son. She explained that their son, at Michael's direction, called her from the dealership asking her to obtain insurance for the new vehicle so that the lease could proceed. Rene stated that the children had numerous 529 accounts worth $430,026 to provide for the cost of college and graduate school. Rene testified that her net worth was around $8.9 million—$2.4 million more than at the time of the divorce, and her adjusted gross income was around $383,000 annually from securities. She stated that she sold her condominium in Foxcroft for $180,000 and paid the realtor fees, closing costs, and other related expenses from the

3

sale and deposited the rest into one of her UBS accounts. Rene explained that the $5540 household-repairs and maintenance expense in her AFM was related to repairing the condominium to get it ready to sell and was no longer an expense; however, she still had home-maintenance expenses, including repairs to her current home that insurance refused to cover, amounting to $80,000 and possibly more. When asked if she expected to pay $5500 a month for expenses going forward, she said, "I don't know at this point." Other maintenance for the new home was $731.26 a month. Rene testified that, after the divorce, she purchased a home and allowed a friend to live there rent-free while her friend was going through a rough patch. She explained that she bought the home with the intention of reselling it later and reinvesting the money in a UBS account. Instead, she put the money ($257,000) from the sale into her Bank of the Ozarks checking account and paid $1.21 million for her current home from that account. Rene testified that she had not filled out any job applications, though she had tried to obtain employment in the marketing division of a company and was not chosen for the position. She testified that she had at one point obtained an editor and had written children's stories but was not successful in that endeavor. As to the children's college, she listed tuition and room and board in her monthly expenses but clarified that she had to pay out of pocket because the university would not accept the 529 funds, and she would be reimbursed from the 529 at some point. Rene explained that she was concerned about completely depleting the children's 529 accounts because they planned to go to graduate school after college, and she wanted to reserve the 529 funds for that; thus, she paid for their son's off-campus housing herself. Rene testified that she no

longer owned the Jeep listed in her AFM, and she agreed that expense should be deducted. Rene included $3000 a month for travel and vacations and explained that she and the children take a once-a-year extravagant vacation that could cost $30,000. Rene testified that their son's rent, utilities, gas, food, and entertainment costs $2000 a month. Their daughter's college housing was estimated to be around $13,000 a semester ($24,000 a year), and her tuition $4133 a month.

Michael testified that he had been the president and CEO of Brady Corporation for seven years, and on weekends he lived in the home he purchased before the marriage, which had been their marital home. He estimated its value to be $350,000. During the week, he lived in Milwaukee or traveled for work. Michael testified that he was worth substantially more than when they were divorced (roughly $16 million at the time of the divorce)—around $39.8 million—though $10 million wasn't his "yet" because it was "future equity" and would not be his if he left the company. He testified that an additional $7 million was not an asset but also future income.

The court denied both parties' motions, finding that neither party had met the burden of proving that a material change in circumstances had occurred. The circuit court found that, pursuant to the 2016 divorce decree, Michael's child-support obligation had terminated. The circuit court recounted that the marital estate worth approximately $13 million was divided roughly in half, with each party receiving $6.5 million in assets. The court determined that at the time of the hearing, the parties agreed that Rene had $6.5 million to invest and earn income, and the net worth of Michael's assets had increased from

$16 million to between approximately $26.277 million and $39.867 million. Michael stipulated to his ability to pay alimony. The court recounted that Rene's AFM in 2016 listed $19,946.25 a month in expenses, including the expenses for their then minor children. Rene's current AFM listed expenses of $39,333.44 a month; however, she agreed that certain expenses should be deducted from the amount—including $635 for a leased vehicle she no longer owned and $950 for children's allowances—and she conceded that $16,549 for college expenses could be covered by the children's 529 accounts. The circuit court found that, after those deductions, Rene's monthly expenses were $21,199.44. The court determined that Rene's monthly income was $25,000, and she received $19,000 a month in spendable income.[2] The court found that Michael's expert witness testified that Rene's investments could generate a 9 percent return, though Rene's expert testified that the return on her investments was around 5 percent. The court determined that the 5 percent return rate was more credible. The court concluded that, in light of the above calculations, Michael failed to show that a material change in circumstances occurred. As to Rene, the court found that her investment income and current alimony sufficiently met her financial need, and she had not proved that an increase in alimony was warranted. The court noted that she had not tried to obtain employment other than her attempt to write children's books. The court found that the divorce decree was silent as to when alimony terminated and ordered that it would terminate as set forth in Arkansas Code Annotated section 9-12-312 (Repl. 2020).

---

[2]The court adjusted the $25,000 amount of Rene's monthly spendable income, applying a 25 percent tax rate and 2 percent rate of inflation.

Michael filed a motion for reconsideration in which he asserted the circuit court erred in its calculation of the deduction of children's expenses from Rene's monthly expenses. He contended that Rene was not legally obligated to support the children once they reach the age of eighteen; thus, Rene's claim of $1110 for the children's clothing, $160 for haircuts, $250 for gifts, and $200 for school supplies should have been included in the court's reduction of her monthly expenses. He argued that there were more deductions that the court missed totaling $6793.84, reducing Rene's monthly expenses to $14,405.60. These costs were related to the children's car insurance, vacations and travel, and Rene's estimated home upkeep and repairs. Again, he contended that a material change in circumstances occurred when the children turned eighteen and the expenses regarding the care of children no longer existed. Michael argued that in 2016, the court determined the amount of alimony was partly based on Rene's ability to obtain employment when the children graduated high school; however, Rene had not sought employment, and this constituted another material change. Michael also cited Rene's change in residence, numerous bank accounts, employment of financial advisors, $2.4 million growth in assets, and sale of two homes as material changes in circumstances. Last, Michael claimed that continued alimony in this case constitutes permanent alimony, which is disfavored by courts and against public policy.

The court did not address the motion, and it was deemed denied. Michael timely filed his notice of appeal. Rene does not appeal the circuit court's denial of her petition to increase alimony.

## II. *Discussion*

## A. Overview and Standard of Review

Michael's poses a four-prong argument that the circuit court abused its discretion in deciding to deny his motion to terminate alimony. First, he argues that Rene's final 2021 AFM overstated her true monthly expenses, and the circuit court did not consider all the evidence regarding her expenses. Second, Michael contends that the circuit court misstated that Rene had $6.5 million to invest and earn income and that her spendable income was $19,000 a month. Third, Michael argues that the circuit court erred in finding that he failed to prove that a material change in circumstances occurred regarding Rene's finances. Fourth, Michael contends that permanent alimony violates the public policy underlying Arkansas Code Annotated section 9-12-312. We affirm.

The standard of review is well settled. We review domestic-relations cases de novo, but we will not reverse a circuit court's finding of fact unless it is clearly erroneous. *Hunter v. Haunert*, 101 Ark. App. 93, 270 S.W.3d 339 (2007). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that the circuit court has made a mistake. *Id.* The circuit court is in the best position to view the needs of the parties in connection with an alimony award. *Bennett v. Bennett*, 2016 Ark. App. 308, 496 S.W.3d 409. The burden is on the appellant to bring up a record sufficient to demonstrate that the circuit court was in error, and where the appellant fails to meet this burden, we have no choice but to affirm the circuit court. *Berry v. Berry*, 2017 Ark. App. 145, at 8–9, 515 S.W.3d 164, 169. A circuit court's decision regarding alimony is a matter that lies within its sound discretion and will not be reversed on appeal

absent an abuse of that discretion. *Chekuri v. Nekkalapudi*, 2019 Ark. App. 221, at 8, 575 S.W.3d 572, 578. An abuse of discretion means discretion improvidently exercised, i.e., exercised thoughtlessly and without due consideration. *Id.*

## B. Points on Appeal

### 1. *Whether Rene's AFM accurately reflects her monthly expenses and her need for alimony*

Michael contends that Rene's final 2021 AFM overstated her true monthly expenses; thus, the circuit court erroneously failed to consider all the evidence. Michael's argument is not well taken.

The law on modification of an alimony award is well settled. Modification of an alimony award must be based on a material change in the circumstances of the parties, and the burden of showing such a change in circumstances is on the party seeking the modification. *Berry*, 2017 Ark. App. 145, at 2, 515 S.W.3d at 166. Changes in circumstances are not material if they were contemplated at the time of the original award. *Id.* The purpose of alimony is to rectify the frequent imbalance in the earning power and standard of living of the parties in light of the particular facts of each case. *Id.* The primary factors to be considered in making or changing an award of alimony are the need of one spouse and the ability of the other spouse to pay. *Id.* Secondary factors that may be considered include the financial circumstances of both parties, the couple's past standard of living, the amount and nature of the parties' current and anticipated incomes, the extent and nature of each party's resources and assets, the amount of income of each that is spendable, the health condition and medical needs of each party, the duration of the marriage, the amount of child support,

9

and the earning ability and capacity of each party. *Johnson v. Cotton-Johnson*, 88 Ark. App. 67, 194 S.W.3d 806 (2004).

Michael contends that Rene did not need alimony, and the court failed to address four overstatements of Rene's expenses amounting to $6792.84 related to children's expenses. Michael also challenges the inclusion of Rene's estimates for home upkeep and repair in her AFM and the estimated cost of a yearly vacation with the children. Michael argues that the court's refusal to deduct these expenses from Rene's AFM was "inconsistent" and an abuse of discretion. We disagree.

Michael relies on *Kelly v. Kelly*, 2016 Ark. App. 272, 496 S.W.3d 391, to support his argument that the circuit court erred by inconsistently allowing some child-related expenses but not others and ignoring "certain facts in evidence . . . in calculating the alimony award." In *Kelly*, this court noted that "without discussion, the trial court awarded Mandy every penny she requested." *Id.* at 5, 496 S.W.3d at 394. This court held that

> [t]he vast majority of Mandy's above requested expenses are non-existent, overstated, or excessive. Mandy claimed $225 per month for lawn care, but it was her testimony that lawn care was provided for by her landlord. She allocated $250 per month for fire insurance but testified she did not pay fire insurance. She claimed $750 per month for health insurance but admitted under cross-examination her health insurance would cost at most $463 per month. We find these items—her $1,000 per month for gifts, $1,000 per month for entertainment and $2,500 per month for vacations—were excessive. Mandy conceded that her monthly figures for food ($1,382), clothing ($1,764), and vacations ($2,500) were based on a family of four, not her current family of three further requiring these figures to be reduced.

*Id.* at 6, 496 S.W.3d at 394–95.

*Kelly* is inapposite to the instant case. Unlike *Kelly*, here, the circuit court did not blindly grant Rene "every penny" she requested. *Id.* at 5, 496 S.W.3d at 394. Instead, the circuit court deducted from Rene's AFM the children's allowance, a lease payment for a car Rene no longer leased, and educational expenses that could be paid from 529 accounts. Michael is correct that child support terminated when the children turned eighteen and/or graduated from high school; however, contrary to Michael's assertion, the court was not prohibited from considering expenses related to the children's needs in determining if Rene needed alimony, and Michael cites no authority supporting his argument that the court must excluded all child-related expenses. Moreover, the court heard Michael and Rene testify that he purchased their son's Toyota Tacoma and requested that Rene pay the auto insurance for the vehicle, and the court could have concluded that the Naumans, like many parents, financially contribute to their adult children's expenses. In light of the facts of this particular case, the court did not abuse its discretion in considering certain expenses related to the children.

Likewise, the court did not abuse its discretion by considering Rene's estimated home maintenance and repairs and the cost of a yearly vacation in determining her monthly expenses. Michael questions the veracity of Rene's reported expenditures on home upkeep and a yearly vacation and argues that her standard of living is much higher than it was when they were married. It was within the circuit court's purview to determine what evidence was most credible. *Berry, supra.* The circuit court apparently accepted Rene's estimations regarding the cost of the maintenance and upkeep of her home and a vacation that "may"

11

cost around $30,000. The circuit court did not abuse its discretion in determining that Rene's monthly income plus alimony continued to meet her needs, and no material change had occurred such that modification was warranted.

Michael's argument that the circuit court abused its discretion when it did not consider the secondary factors in its alimony determination also fails. It was not mandatory for the circuit court to even consider the secondary factors. *Trucks v. Trucks*, 2015 Ark. App. 189, 459 S.W.3d 312. Rather, they are factors that a circuit court "may consider" in determining whether to award alimony. *Id.* Moreover, as stated above, the purpose of alimony is to rectify the frequent imbalance in the earning power and standard of living of the parties in light of the particular facts of each case. During the four years after the divorce, Michael's assets as much as doubled. Though Michael contends that Rene's home is more luxurious than the marital home, the court also heard testimony regarding Michael's much improved economic situation and earning power, and the parties agree that Rene had been doing the day-to-day parenting of their daughter who had just graduated from high school at the time of the hearing. In light of the facts of this case, the circuit court did not abuse its discretion in determining that a modification of alimony was not warranted. The dissent argues that the majority repeats the error of the circuit court in affirming its finding that there was no change in material circumstances. To be clear, the crux of the circuit court's decision that no material change occurred is well supported by the extensive testimony of the parties. On the surface, there looks to have been changes since the decree was entered; however, the situation is essentially the same as at the time of the divorce. The court found

that Rene's needs are met by alimony plus her income; thus, no material change occurred, and alimony should remain the same. We hold that the circuit court performed the required analysis in deciding that a material change in circumstances did not occur.

## 2. *Rene's assets and income*

Michael contends that the court underestimated Rene's monthly spendable income, asserting that her monthly spendable income is $21,500, and not $21,199.44 as the circuit court determined. Moreover, Michael asserts that the $21,199.44 amount is questionable because it "exactly matched the amount the circuit court allowed for Rene's monthly expenses." According to Michael, in determining the amount of Rene's assets and income, the court ignored $180,000 (for the Foxcroft condo sale) and $257,000 (for the rent house sale) totaling $437,000. Adding that amount to the $6.5 million Rene was awarded in the divorce decree, he contends that Rene had $6.937 million in income-generating assets. Michael contends—using the new, larger amount of assets and the court's findings regarding the tax rate and inflation—that the correct amount of Rene's spendable income is $21,500.04; thus, the circuit court abused its discretion by not considering the other income-generating assets.

The amount of alimony awarded should not be reduced to a "mathematical formula" because the need for flexibility outweighs the need for relative certainty. *Farrell v. Farrell*, 2017 Ark. App. 7, at 8, 510 S.W.3d 787, 792. Michael contends that the court was required to determine Rene's income with exact certainty by including the calculation of her assets and the amount of the sale of two homes. Michael's argument that $180,000 and $257,000

13

should be added to Rene's income-generating assets is demonstrably oversimplified. Rene testified, and sale documents admitted to evidence confirm, that over $15,000 was deducted from the sale of the Foxcroft condominium for fees and costs, and Rene testified that she spent a significant amount of money repairing the condominium before it was sold. Michael does not address whether the sale of Rene's other home involved similar deductions from the sale price. The circuit court heard both parties' experts assess Rene's approximate income by starting with the same amount of assets—around $6.5 million. From there, the Michael's expert suggested a 9 percent rate of return, while Rene's expert testified that the rate of return should be estimated at 5 percent. Michael does not take these facts into account in making his argument, underlining the importance of the court's discretion to weigh the evidence in assessing the need for alimony and determining whether a material change in circumstances has occurred since the original determination that alimony was warranted. Michael's argument that the court's finding regarding Rene's monthly expenses is "suspicious" is a matter of credibility, and the circuit court is in the best position to view the needs of the parties in connection with an alimony award. *Bennett*, *supra*.

Michael is asking this court to reweigh the evidence in his favor. It is not this court's duty to substitute its judgment for that of the circuit court. *Carr v. Carr*, 2019 Ark. App. 513, at 12, 588 S.W.3d 821, 828. Rather, it is for us to determine whether the circuit court abused its discretion in finding that Rene needed alimony. It is the appellant's burden to show that the circuit court abused its discretion by making a decision that was arbitrary or groundless. *Becker v. Becker*, 2019 Ark. App. 230, at 6, 575 S.W.3d 608, 611. Here, the circuit court

14

clearly considered the evidence and testimony and conducted the required analysis. The dissent asserts that Rene clearly did not need alimony. Though we might have weighed the evidence differently, and it is difficult to fathom "need" in light of the Naumans' wealth, Michael has not shown that the circuit court's decision was arbitrary or groundless. In light of our our standard of review, the discretionary nature of alimony awards, and the evidence before the circuit court, we are not left with a definite and firm conviction that the circuit court has made a mistake.

### 3. *Whether continued alimony violates public policy*

Michael argues that the circuit court has awarded Rene "permanent alimony," which is against the public policy underlying Arkansas Code Annotated section 9-12-312. Section 9-12-312(2) sets forth multiple contingencies that can trigger the automatic cessation of alimony, including death, remarriage, and cohabitation and also states that either party may petition the court for "review, modification, or both . . . at any time based upon a significant and material change of circumstances." Ark. Code Ann. § 9-12-312(a)(7); *See Carr*, 2019 Ark. App. 513, at 9, 588 S.W.3d at 827. Court-ordered alimony is always subject to modification. *Dace v. Doss*, 2017 Ark. App. 531, at 3, 530 S.W.3d 893, 896. If Michael subsequently petitions the circuit court to modify the award of alimony, the circuit court will hear evidence and determine whether the alimony should be modified or terminated; thus, his argument fails. Accordingly, we affirm.

Affirmed.

GLADWIN, GRUBER, HIXSON, and BROWN, JJ., agree.

15

HARRISON, C.J., and ABRAMSON, KLAPPENBACH, and BARRETT, JJ., dissent.

**STEPHANIE POTTER BARRETT, Judge, dissenting**. The majority affirms the circuit court's finding that there was not a material change of circumstances to warrant a modification of the prior award of alimony. I respectfully dissent. The majority, like the circuit court, has undermined the standard in Arkansas for alimony modification by weighing the factors before ever determining if a material change in circumstances occurred. To modify an alimony award, a circuit court must first determine that a material change in circumstances has occurred; *if* that threshold requirement is met, it must then turn to the primary factors in awarding alimony – the need of one spouse and the ability of the other spouse to pay. *Herman v. Herman*, 335 Ark. 36, 977 S.W.2d 209 (1998). This court has found that a material change in circumstances exists when (1) a party's financial need has been significantly reduced due to a child reaching the age of majority; (2) a party's financial situation has considerably improved since the date of divorce; and (3) a party's standard of living exceeds that which he or she was accustomed to during the marriage. *See Valetutti v. Valetutti*, 95 Ark. App. 83, 234 Ark. App. 83 (2006); *Evtimov v. Milanova*, 2009 Ark. App. 208, 300 S.W.3d 110. Here, the record plainly evidences several material changes in circumstance: (1) the parties' children having reached the age of majority; (2) Rene's approximate $3 million increase in net worth; and (3) Rene's greatly increased standard of living, far beyond that which she was accustomed to during her marriage to Michael.

The parties were divorced by decree in Pulaski County in 2016 and agreed to equally divide much of the marital estate, with each party receiving approximately $6.5 million in

liquid assets and personal property. As the majority correctly points out, the circuit court considered Rene's affidavit of financial means, which listed her monthly expenses as $19,946, and awarded Rene $2,500 a month in alimony based on that amount. The decree specifically stated that "the court finds the appropriate amount of alimony is $3,500 per month; however, the court charges [Rene] with $1,000 a month as income she could earn on her own." In addition to alimony, the decree awarded Rene $9,100 in monthly child support that has now ceased because the parties' children are over the age of eighteen. However, the majority glosses over the fact that it was contemplated in the parties' divorce decree, and by this court in *Nauman v. Nauman*, 2018 Ark. App. 114, 542 S.W.3d 212, that once the parties' children reached majority, Rene's earning capacity could increase. *See Nauman*, 2018 Ark. App. 114, at 12, 542 S.W.3d at 219. At the time of the hearing, both of the parties' children were enrolled in college. This material change in circumstances—the parties' children reaching the age of majority—was contemplated and now has occurred. Thus, it was erroneous for the circuit court to find there was not a material change in circumstances as to the parties' children reaching majority.

Additionally, the record evidences another material change in circumstances as to both Rene's and Michael's substantial increases in income: Rene's net worth increased by approximately $3 million (now totaling her assets at $8.9 million), and Michael's net worth increased to approximately $40 million. When a party's financial situation has considerably improved since the date of divorce, a material change has occurred. *Valetutti*, 95 Ark. App.

17

at 86, 234 S.W.3d at 340. Thus, it was erroneous for the circuit court to find there was not a material change in circumstances as to the parties' substantial increases in income.

Finally, the record evidences a third material change in circumstances as to Rene's standard of living from the time alimony was originally awarded. Rene's June 2021 affidavit of financial means listed her monthly expenses as $39,333.44, a nearly $20,000 increase since she and Michael divorced. Testimony and evidence from trial established that this increase in expenses correlates with Rene's increase in her standard of living and the purchase of her larger home. The parties' marital home was approximately 3,000 square feet with a fair market value of $350,000. Rene now lives in a 7,100-square-foot home that she purchased outright for $1.2 million. Rene's June 2021 affidavit of financial means reflects she pays $5,540 in monthly home repairs and maintenance, $731 in monthly lawn care, and $362 in property owner's association fees, for a total of $6,633 a month in house-related expenses in addition to $2,421 in property taxes. In comparison, when the parties were married, they spent $250 a month on home maintenance, $350 a month on lawn care, and paid no property owner's association fees, totaling $600 in monthly house-related expenses in addition to $600 in yearly property taxes. Rene's $6,033 per-month increase to maintain her new standard of living is certainly a material change. Further, at the time of divorce, Rene's monthly expenses listed $2,580 for travel and expenses. However, her June 2021 affidavit of financial means listed $400 a month for entertainment and $3,000 a month for travel, again deviating from the standard of living Rene was accustomed to during her marriage to Michael. Alimony is meant to help a spouse maintain the standard of living she

was accustomed to prior to the divorce, not to support the increased standard of living Rene has established on her own. *See Evtimov*, 2009 Ark. App. 208, 300 S.W.3d 110. Thus, it was erroneous for the circuit court to find there was not a material change in circumstances as to Rene's standard of living.

While it was erroneous for the majority to weigh the alimony factors before establishing whether a material change in circumstances had occurred, having found a material change in circumstances, this dissent's focus now shifts to the primary factors in awarding alimony—the need of one spouse and the ability of the other spouse to pay. *Herman*, 335 Ark. 36, 977 S.W.2d 209. The circuit court made findings of fact regarding the financial position of the parties, and under our de novo review, it is evident that although Michael has the ability to pay, Rene no longer has a need for alimony.

The circuit court found Rene had a need of $21,199.44 and a monthly spendable income of $19,000. Included in these figures was a $3,000 monthly expense for vacations, totaling $36,000 a year. However, Rene testified she may spend $30,000 a year on one extravagant vacation; thus, by her own testimony, Rene's monthly "need" should be reduced by $500. The circuit court erred in this regard. Further, Rene testified her need for alimony stems from a desire to continue providing financial support to the parties' adult children and to maintain her standard of living. Rene's June 2021 affidavit of financial means reflects nearly half of her monthly expenses pertain to the parties' adult children. However, alimony is meant to support the financial needs of the spouse to whom it is awarded—not the children—and Michael is not obligated to continue providing support for the parties'

children now that they have reached majority. *See Kelly v. Kelly*, 2017 Ark. App. 599, 534 S.W.3d 168; *Babb v. Matlock*, 340 Ark. 263, 9 S.W.3d 508 (2000). The majority contends that because Michael has also contributed to the financial support of the parties' adult children, it was reasonable for the circuit court to conclude the Naumans, like many parents, financially contribute to their adult children's expenses. While that may be true, the majority misses the point that both Michael and this dissent attempt to make—each party may support an adult child with his or her *own* finances, but Michael is not obligated to continue paying alimony to Rene so she can cover her desired portion of those expenses. Rene cannot use support for adult children, thereby increasing her monthly expenses, as a basis for continued alimony—that is what the child support was for. *Id.* Further, Rene's monthly expenses should not be increasing due to covering the educational costs of the parties' children when the testimony established that the children's 529 plans and irrevocable trusts more than covered those costs.

Moreover, the majority's recitation of the facts gives the illusion Rene was searching for employment, but Rene testified she has plenty of resources such that she does *not* need to seek reemployment, and she has chosen not to. In fact, Rene testified that writing children's books is a hobby of hers, and the "attempt to obtain employment in the marketing division of a company" was no more than casual conversation at a black-tie event that never included a formal interview. Clearly, Rene has the ability and capacity to earn money on her own, but by her own admission chooses not to. During Rene's testimony, she frequently made statements about having resources that allowed her to do certain things—for example,

she bought a home for a friend who did not have a place to live during a divorce and did not charge her rent, and she allowed a different friend to live in her Little Rock condo free of charge. Had Rene charged rent for her properties, she would have additional income. At the time of the hearing, Rene was fifty-two years old without any health issues, she was four hours short of finishing her marketing degree, and both children were enrolled in college. She did not have a continued need for support.

Both the majority and the circuit court erred in not establishing a material change in circumstances before analyzing the primary factors for awarding alimony and further erred by not determining that Rene no longer had a need for continued support. In *Cochran v. Cochran*, 309 Ark. 604, 832 S.W.2d (1992), the supreme court held that under a de novo review, when a record is fully developed, the reviewing court can make determinations without remand. Therefore, I would reverse the circuit court's order finding that a material change in circumstances did not occur and terminate Michael's alimony obligation to Rene.

HARRISON, C.J., and ABRAMSON and GRUBER, JJ., join.

*Gill Ragon Owen, P.A.*, by: *Dylan H. Potts, Christopher L. Travis*, and *Mitchell S. Dennis*, for appellant.

*Dodds, Kidd, Ryan & Rowan*, by: *Catherine A. Ryan*, for appellee.