Cite as 2025 Ark. App. 403

# ARKANSAS COURT OF APPEALS
## DIVISION III
No. CV-24-219

| | | |
|---|---|---|
| CYNTHIA HILL | | **Opinion Delivered** September 3, 2025 |
| | APPELLANT | |
| | | APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. 26DR-22-595] |
| V. | | |
| DANA HILL | | HONORABLE CECILIA DYER, JUDGE |
| | APPELLEE | |
| | | AFFIRMED |

**CASEY R. TUCKER, Judge**

Cynthia Hill and Dana Hill were divorced by decree entered December 7, 2023, after a twenty-eight-year marriage. Cynthia appeals from the divorce decree and a postdecree order, arguing that the circuit court erred in awarding Dana alimony. We affirm.

## I. *Facts*

On August 4, 2022, Cynthia filed for divorce. The parties, married since 1995, had no minor children but had marital property and debt to divide. Dana answered and filed a counterclaim seeking temporary spousal support. On October 19, the court conducted a temporary hearing on the use and possession of the marital home. Before the hearing, the parties reached an agreement that was put on the record and reduced to an agreed order

filed on November 14. Pursuant to that temporary agreement, Dana had until January 1, 2023, to completely move out of the marital home and into the parties' rental home.

### A. Agreement at the Final Hearing

On October 13, 2023, Dana filed an amended counterclaim seeking permanent alimony. At the final hearing on November 14, the parties announced that they had reached an agreement on all the issues except Dana's counterclaim for alimony. The parties agreed (1) that Cynthia would be awarded the divorce; (2) to sell their two homes—the marital home and the rental home—and split the equity evenly; (3) that Dana would take the Escalade, the Audi and its associated debt, and the Lexus; (4) that Cynthia would receive the 2021 Mercedes and assume the $47,000 outstanding debt; and (5) to divide their retirement accounts equally.[1]

The parties further agreed that Cynthia would assume all the marital debt except for the debt remaining on the Audi and the mortgages on the homes (which would be paid from the proceeds of the sale) totaling more than $74,000.[2] Dana agreed to pay Cynthia $355 within thirty days to pay off Dana's outstanding cell-phone bill.

---

[1]Cynthia agreed to split the retirement accounts—even if the value of Dana's account was zero.

[2]Cynthia conceded that $23,646 of the assumed debt consisted of student loans owed by the parties' thirty-one-year-old daughter.

## B. Alimony

The court heard testimony on Dana's alimony counterclaim. Dana's first witness, Cynthia, testified she is employed as a licensed long-term-care administrator with First Step, Inc. She is a registered nurse (RN) and had been a licensed practical nurse (LPN) since 1997. She obtained both nursing certifications after the marriage. Cynthia testified that her gross income at her current job is $3511.73 biweekly, or roughly $7000 a month. Cynthia admitted that her affidavit of financial means ("AFM") reflected her biweekly net income rather than her monthly gross income.

Cynthia testified that Dana had retired after eighteen or nineteen years employed in the purchasing department at CHI St. Vincent. Dana also worked several years for NSC before his current position as an administrative assistant with the Garland County Road Department. Cynthia testified that Dana has a college degree[3] and a paralegal certificate, and he is capable of earning more income than he is making at his current position. She also stated that they shared responsibility for maintaining the household. According to Cynthia, in addition to Dana's full-time job, he prepares and files tax returns for "dozens" of people, earning $250 for each client.

Cynthia further testified that Dana was the spender in the marriage and spent all his retirement earned from previous employment, including purchasing the three vehicles (that were admittedly eighteen, seventeen, and twelve years old) that were awarded to him by

---

[3]The testimony established Dana has an associate degree.

agreement. Cynthia claims to be frugal, though she admitted she received only $1500 for the vehicle she traded in for a $49,000 Mercedes. During the separation, Cynthia, who remained in the marital home, paid the household bills and the mortgage.[4] Dana lived in the rental house and paid the mortgage of $146[5] a month. Cynthia agreed that the rental house is smaller than the marital home and does not have central heat and air.

Dana testified that he is a licensed therapist and also has a paralegal certificate. He said he wanted to be a lawyer, but he and Cynthia agreed he would put his career on hold while Cynthia advanced in her career. He testified he previously worked at CHI St. Vincent as a purchasing agent but was let go in 2005 "when the economy cut back . . . [e]verybody lost their jobs." Over the years, he worked doing things to supplement his income, including selling DVDs out of the home. Dana testified that at one time, he worked for Liberty Taxes, but it went out of business. Dana testified he did everything to support Cynthia in becoming an LPN and an RN and later obtaining an administrator's license in order to advance her career.

Dana testified he had recently signed a new AFM. His original AFM had been provided to his previous attorney who had passed away before the hearing. He testified that

---

[4]Cynthia's brother moved in with her after she and Dana separated and paid her $550 a month in rent towards the $850 mortgage payment.

[5]Cynthia testified the balance of the mortgage owed was $1600, while Dana testified $2000 was outstanding.

he grossed $1300 twice a month, or $2600 a month, working for the county.[6] The parties

agreed to split the net proceeds after the sale of both homes. Dana estimated both parties

would each net $50,000 from the sale of the marital home (valued at $175,000) and $10,000

from the sale of the rental house (valued at $22,000 with less than $2000 owed on its

mortgage).

In closing, Dana's lawyer advocated that Dana should receive alimony due to the

economic imbalance and the parties' standard of living during the marriage. Cynthia's

attorney countered, noting Dana's monthly gross income of $2600 is double his expenses of

$1300. Cynthia's attorney also argued Dana is getting half of Cynthia's 401(k) ($28,000) and

approximately $60,000 equity in the homes. After the parties rested with respect to the

alimony issue, Cynthia and her witness testified as to grounds and residency. The court took

the alimony issue under advisement.

### C. The Ruling on Alimony

On December 7, 2023, the circuit court entered a divorce decree reflecting the

agreement of the parties and granting Dana's request for alimony in the amount of $850 a

month.[7] The court explained:

> The Defendant's request for alimony is hereby granted. Plaintiff shall pay to
> Defendant the sum of $850.00 each month in alimony beginning November
> 30, 2023, and said sum shall be due on or before the last business day of each
> month thereafter. Said alimony payments shall be made through the Garland

---

[6]Dana's AFM also reflected net income rather than gross income.

[7]The court issued a letter opinion on the spousal-support issue on November 16, and
the terms of that letter opinion were merged into the decree.

County Registry of the Court and Plaintiff shall be responsible for payment of the fee assessed by the Clerk of the Court for the collection and distribution of said payments. Plaintiff's liability for alimony shall automatically cease upon the earlier of the conditions set forth in A.C.A. 9-12-312(a)(2)(A) through (F). The Court has considered the need of the Defendant to receive alimony and Plaintiff's ability to pay as well as the age of the parties and their station in life, standard of living during the marriage, length of the marriage, the parties' respective incomes and earning power (current and anticipated), the extent and nature of each parties' resources and assets, and the terms of the parties' settlement agreement announced on the record.

The Court has also considered that the purpose of alimony is to rectify the economic imbalances in earning power and standard of living considering the facts of the case. The parties are fifty-four and fifty-three years of age and have a twenty-eight-year marriage during which the Plaintiff attained her educational and career goals with the support of the Defendant. The Court has determined that Plaintiff's gross monthly income is approximately $7608 and Defendant's gross monthly income is approximately $2,833. Plaintiff has approximately $3000 in disposable income after payment of her monthly expenses. Defendant has approximately $1100 in disposable income after payment of his monthly expenses. The parties have agreed to sell both homes and equally divide the net proceeds from the sale(s). Defendant has a need for adequate housing comparable to the standard of housing during the marriage and it is reasonable that housing will cost Defendant more than the $150 per month he is currently paying. Both parties acknowledged that the house in which Defendant is currently residing is substandard. The parties have an economic imbalance in earning power. Plaintiff has a Bachelor's degree, is a registered nurse, and holds special licensing in long term care. Defendant has an Associate's degree and has not worked over the course of the parties' marriage in his chosen or preferred career as a paralegal. Plaintiff's earning power greatly exceeds that of the Defendant.

D. Motion for Reconsideration and Hearing

On December 7, 2023, Cynthia moved for reconsideration or for a new trial. The court held the enforcement of its alimony ruling as set forth in the decree in abeyance and scheduled a hearing. Cynthia also filed a notice of appeal on January 4, 2024. The court held a hearing on Cynthia's motion on January 18. During the hearing, while no testimony was

6

taken, the court heard arguments from the attorneys. Cynthia's attorney proffered an exhibit that purported to show Dana earned $14,000 a year from a tax-preparation business, which conflicted with the testimony at the trial. In addition, Cynthia's attorney argued the parties each would have $100,000 from the sale of the two houses, claiming without documentation that the rental home was valued at $75,000, and the marital home was valued at $150,000. Cynthia's attorney continued to argue "from the undisputed testimony there's not a lot of difference in the value of the two homes, where they are living" and that the rental house was not "substandard."[8] Dana's attorney objected to the admission of any new evidence under Arkansas Rules of Civil Procedure 59 and 60 because the proffered evidence would have been available at the trial, and Cynthia's attorney had ample time to complete discovery before trial. After hearing arguments from counsel, the court took the issue under advisement.

By order dated January 26, the court denied Cynthia's motion for reconsideration and reinstated the alimony award. Cynthia filed a timely amended notice of appeal, citing the postdecree order, the opinion letters, the temporary order following the decree, the divorce decree, and opinion letter following the final hearing.

Cynthia's point on appeal is that the circuit court abused its discretion by awarding Dana alimony "when there was absolutely no evidence to support an alimony award."

---

[8]Directly referring to the decree that mentioned the rental home was substandard in comparison to the marital home.

Cynthia states (1) the alimony award was based on evidence not in the record and misstates portions of the record; and (2) the record is not sufficient to support an alimony award.

## II. *Overview and Standard of Review*

We review domestic-relations cases de novo on the record, but we will not reverse a circuit court's findings of fact unless they are clearly erroneous. *Trucks v. Trucks*, 2015 Ark. App. 189, 459 S.W.3d 312. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that the circuit court has made a mistake. The burden is on the appellant to bring up a record sufficient to demonstrate that the circuit court was in error, and where the appellant fails to meet that burden, we have no choice but to affirm the circuit court's order. *Berry v. Berry*, 2017 Ark. App. 145, at 8–9, 525 S.W.3d 164, 169.

A circuit court's decision regarding alimony is a matter that lies within its sound discretion and will not be reversed on appeal absent an abuse of discretion. *Id.* An abuse of discretion means discretion improvidently exercised or exercised thoughtlessly and without due consideration. *Id.* The circuit court is in the best position to review the needs of the parties in connection with an alimony award. *Bennett v. Bennett*, 2016 Ark. App. 308, 496 S.W.3d 409. Appellate courts will defer to the superior position of the circuit court to judge the credibility of the witnesses. *Taylor v. Taylor*, 369 Ark. 31, 252 S.W.3d 232 (2007).

## III. *Points on Appeal*

### A. Evidence Not in the Record or Misstatements

8

For her first point on appeal, Cynthia claims the court based its award of alimony on evidence not in the record and incorrect statements in the record. Cynthia argues that the circuit court inaccurately determined that "the parties have an economic imbalance in earning power" because Cynthia "has a bachelor's degree, is a registered nurse, and holds special licensing," and Dana "has an associate's degree and has not worked over the course of the parties' marriage in his chosen or preferred career as a paralegal." She argues that these inaccuracies render the court's justification for finding an "economic imbalance" erroneous because (1) Cynthia did not obtain a bachelor's degree; and (2) Dana did not testify that his career of choice was to be a paralegal.

While the court may have misstated that Cynthia holds a bachelor's degree,[9] this misstatement is not material to the fact she is employed in a field utilizing her specialized licensing that allows her to earn income substantially higher than Dana's. She has always worked in her chosen field and was able to obtain further specialized certifications throughout their marriage. The fact that Cynthia obtained an associate degree rather than a bachelor's degree does not diminish the significance of the certifications Dana helped her achieve and is, therefore, irrelevant to the court's reasoning in awarding alimony.

In the court's ruling awarding Dana alimony, the court mistakenly stated Dana had not worked in his chosen or preferred career choice as a paralegal. Notwithstanding the testimony that established that Dana had, in fact, obtained his paralegal license, he testified

---

[9]Both parties hold an associate degree.

9

he really wanted to become a lawyer but was unable because "[he] was taking care of a household." It was certainly true that Dana had not worked as a paralegal. However, the unchallenged testimony was that there were no paralegal jobs available in the area. Further, Cynthia admitted she had no idea how much money a paralegal could earn or whether it was comparable to her salary.

Cynthia argues the court failed to acknowledge Dana's past work experience as a purchasing agent, tax preparer, and licensed therapist as support for her proposition that he could earn a higher salary. While these may have been job titles he held in the past, there was no proof there were any jobs in these areas that were available to him. Instead, the following exchange occurred regarding Dana's ability to earn a higher income:

Q:     As you sit here today, so you have the ability or the means to seek employment that would cause you to earn more money than you bring home right now?

A:     Not around, not in Hot Springs, sir. The job opportunities are not out there. And not trying to be funny. I'm a black man and I've been working, I've been struggling for a long time and I know if you don't work you don't eat. So you got to accept what you can accept to try to move forward.

Dana testified he is a licensed therapist but put his career on hold to support Cynthia's goals: "Because when you have a household, when you have a wife and a child sometimes all that comes first."

It is clear the court chose to believe Dana that Cynthia attained her career goals "with the support of Dana," who testified,

10

> I did everything. I don't even know when she started driving on the highway. . . . She couldn't make it from here to Little Rock and I took off work a bunch of times to support her, to help her, to make sure—I put my career in back on a lot of things . . . . I did everything I could to try to be financially on her level but I never achieved it.

To the extent the court mischaracterized Dana's career aspiration as becoming a paralegal rather than an attorney, that distinction is immaterial. The relevant fact is that Dana obtained a paralegal certificate but was unable to find employment that allowed him to earn an income comparable to Cynthia's. Likewise, the court was free to believe he had no ability to earn a higher income than he was earning at his present job. Accordingly, the court's mischaracterization regarding Dana's intended career path is immaterial to its finding that Dana sacrificed his own professional ambitions to support Cynthia's career.

Cynthia next argues that the court incorrectly determined that the rental house in which Dana lived was substandard in comparison to the marital home. Cynthia argues on appeal there was no testimony presented at trial that the rental house was substandard. The only valuation of the two homes came from the testimony of Dana, who speculated the rental home was worth $22,000 while the marital home was worth $175,000. Dana testified that the rental home had no central heat and air. Cynthia did not offer an opinion on the value of the two homes. Instead, she admitted that the rental home was a much smaller, less expensive home with no central heat and air.

We find the court did not abuse its discretion in finding that Dana established a financial need for adequate housing comparable to the standard of housing enjoyed during the marriage. Clearly, the rental home was not comparable to the marital home. The court

11

recognized Dana's housing needs were greater than the home in which he lived during the parties' separation pending divorce—a house valued at $22,000 was undeniably modest compared to a house valued at $175,000. The court acknowledged that the parties had been married for twenty-eight years and had lived in the marital home during the marriage. Thus, it was reasonable for the court to conclude that $146 a month was not sufficient to cover the cost of Dana's housing needs.

Cynthia's next argument, that the court abused its discretion by misstating Dana's income as the basis to award alimony, has no merit. It is undisputed that Dana earns far less than Cynthia according to the admitted AFMs and the parties' testimony at the hearing. The court made findings in its decree that Cynthia's gross monthly income was $7600 and Dana's gross monthly income was $2833. The only other income the judge could have considered for Dana was $250 a person he allegedly made preparing taxes for "dozens of people," it is clear from the decree that the circuit court chose not to accept Cynthia's testimony that Dana's income was supplemented by a tax-preparations business. While Dana admitted to doing things on the side to earn extra income during the marriage, the attorneys never developed how much, if any, he earned preparing taxes for others and whether he was still actively performing these services. The court was free to accept or reject Cynthia's testimony with respect to Dana's tax-preparation business, and without any proof at the trial, it was an issue of credibility. We held in *Trucks*, 2015 Ark. App. 189, at 5, 459 S.W.3d at 316:

> Although the facts of this case would arguably support the denial of an award
> of alimony if that had occurred, it is not our duty under our standard of review
> to simply substitute our judgment for that of the circuit court which was in a

12

far better position to judge the credibility of the witnesses. It is instead our duty to determine if the court abused its discretion in making its findings regarding the award of alimony.

(Citation omitted.) If Cynthia had evidence that Dana grossed more than $2833 a month, she should have presented that evidence at trial[10] rather than rely solely on her own testimony.

## B. Sufficiency of Evidence in the Record

For her final point on appeal, Cynthia argues that the court abused its discretion by awarding Dana alimony with no actual evidence in the record to support alimony. Essentially, this is the same argument she made with respect to her first point on appeal that the circuit court erred in finding an economic imbalance between the parties.

Cynthia argues Dana failed to establish a financial need for alimony, again focusing on unproven income from a tax-preparation business that the court chose not to use in its income analysis. Because there was no proof of this income before the court, we find that it did not abuse its discretion by not including this in Dana's income.

Alimony can be awarded to rectify the economic imbalances in earning power and standard of living in light of the particular facts and circumstances. The court will consider

---

[10]At the hearing on Cynthia's motion for reconsideration or new trial, Cynthia proffered an exhibit, which was not admitted or considered by the court, that reflected Dana purportedly made an additional $14,000 a year in his tax-preparation business. With respect to any arguments that Cynthia may have made regarding issues contained in the posttrial motion or postdecree orders, we decline to discuss them because she failed to develop any argument that the court abused its discretion in its ruling.

the financial need of one spouse and the other spouse's ability to pay. *Foster v. Foster*, 2016 Ark. 456, at 9, 506 S.W.3d 808, 814–15. Secondary factors the court may consider in awarding alimony include (1) the parties' financial circumstances; (2) the parties' past standard of living; (3) the value of jointly owned property; (4) the amount and nature of the parties' income, both current and anticipated; (5) the extent and nature of the resources and assets of each party; (6) the amount of income of each party that is spendable; (7) the earning ability and capacity to earn of the parties; (8) the property awarded or given to one of the parties, either by the court or the other party; (9) the disposition of the homestead; (10) the respective health and medical needs of the parties; (11) duration of the marriage; and (12) the amount of child support. *Boyles v. Boyles*, 268 Ark. 120, 594 S.W.2d 17 (1980).

Cynthia posits that Dana did not provide any evidence of disparity in earning power but acknowledges there was disparity in their current income. Cynthia cites *Grimsley v. Drewyor*, 2019 Ark. App. 218, 575 S.W.3d at 636, for the premise that an award of alimony should be reversed when one party "presented no evidence that he was incapable of earning a living in his profession or of working more hours." *Id.* at 15, 575 S.W.3d at 644. In *Grimsley*, the parties were both licensed attorneys and had similar work experience. While the parties had equal earning capacities, Drewyor chose to work in a solo practice, which provided him with "flexibility" rather than use his skills to obtain employment that might earn him more money. The amount of alimony awarded resulted in an inequitable distribution of their monthly incomes, leaving him almost twice the income left to her. *Id.* This court reversed, finding that the circuit court had abused its discretion in awarding alimony.

14

This case is easily distinguishable in that the parties are not equally skilled and do not have equal earning capacities. Dana is employed full time. While he earned his paralegal certificate, he never worked in the field and was not able to find employment in the area. Likewise, it was an issue of credibility for the court to believe Dana's testimony that he did not have the ability to earn a higher income. The award of alimony in the present case does not result in an inequitable distribution of the parties' monthly incomes as it did in *Grimsley*. The alimony award of $850 a month to Dana, when combined with his $2833 gross income, results in $3683 a month in gross income for Dana. Reducing Cynthia's monthly gross income of $7600 by the alimony payment results in $6750 a month in gross income for Cynthia. Considering the testimony at trial and the parties' AFMs, after payment of their monthly expenses, each party will have sufficient disposable income.

In the decree, the court considered the primary factors—Dana's financial need in comparison to Cynthia's ability to pay. In addition, the court considered the secondary factors as set forth in the decree: the parties' "station in life, standard of living during the marriage, length of the marriage, the parties' respective incomes and earning power (current and anticipated), the extent and nature of each parties' resources and assets, and the terms of the parties' settlement agreement announced on the record." We defer to the circuit court with respect to credibility determinations and find that the court did not abuse its discretion by finding an economic imbalance, Dana's need for support, and Cynthia's ability to pay. We affirm.

Affirmed.

15

VIRDEN and BROWN, JJ., agree.

*Taylor & Taylor Law Firm, P.A.*, by: *Tory H. Lewis*, *Andrew M. Taylor*, and *Tasha C. Taylor*, for appellant.

*Hurst Law Group*, by: *Josh Q. Hurst*, for appellee.